Sullivan,
Feb. 5, 1907.

### HICKS v. CLAREMONT PAPER CO.

The failure of a master to warn his servant concerning an obvious danger of the employment does not constitute actionable negligence.

In an action by a servant to recover for a personal injury resulting from the master's negligent failure to give proper warning or instruction, it is incumbent upon the plaintiff to affirmatively show the existence of a special danger not apparent to the observation of an unskilled workman, or that special skill was required to enable one to do the work in safety.

CASE, for personal injuries alleged to have been caused by the defendants' negligence. Trial by jury and verdict for the plaintiff. Transferred from the November term, 1905, of the superior court by *Chamberlin*, J., upon the defendants' exception to the denial of their motion for an order of nonsuit.

The testimony tended to prove the following facts: February 20, 1905, the plaintiff was employed by the defendants as third hand for one of the paper machines in a room of their paper mill, and continued in the employment until his injury on April 30, 1905, working during the daytime and the nighttime of alternate weeks. He was about twenty-seven years old, of average intelligence, and had never worked in a paper mill before. The hands for each machine were a machine tender, a back tender, and a third hand. A foreman for the room had oversight of the business and control of the employees. The duties of the third hand were to pick up broken paper, sweep the floors, wash the screens, assist in removing paper from the back end of the machine, do up the paper for shipment, and carry it to another room. The paper machine to which the plaintiff was assigned was sixty to seventy feet long, and comprised several parts, among which were three sets of press

rolls, each set consisting of the following rolls supported in horizontal positions in a suitable frame: a wooden roll about eight inches in diameter, located at the front end of the frame about three feet above the floor of the room; another wooden roll of the same diameter, located about three feet back of the first one and at a slightly higher elevation; a wooden roll of greater diameter in the middle than at the ends, called the spread roll, located directly in front of the second roll; two rolls about eighteen inches in diameter, known as press rolls, located twelve to fifteen inches back of the second wooden roll, placed one above the other, and running so near together as to pinch the felt belt and paper passing between them, the upper roll being made of brass and the lower one of rubber or some material covered with rubber; and several other rolls, some located further back than the press rolls, and some further forward but in a lower plane. An endless felt belt passes from the first wooden roll, over the spread roll and the second wooden roll, to and between the press rolls, and thence over the other rolls back to the first wooden roll. When the machine is running this belt is taut, and receives the paper from a preceding part of the machine and carries it forward between the press rolls to the next succeeding part. The press rolls revolve inwardly toward the front of the machine and press the paper as it passes between them.

It is necessary to wash and turn the felt belt from time to time. Preparatory to so doing, the spread roll is taken out, the tension of the belt is further loosened by an adjustment of a portion of the machine designed for the purpose, and the speed of the belt is reduced. An employee standing at the front side of the machine, opposite the space between the two wooden rolls, and another standing on the other side, simultaneously push the edges of the belt toward its median line, thereby bunching or "roping" it up. When this is accomplished, water is poured on the belt for about ten minutes. Then the employee at the front of the machine grasps from the upper side the edge of the belt farthest from him and pulls toward himself, while the other employee, putting his hands under the belt and grasping the other edge, pulls toward himself. As the belt passes around in its course it is turned by several pulls made in that way. The operation, from beginning to end, occupies from twenty-five to thirty minutes.

Shortly after eleven o'clock in the evening of Saturday, April 30, the foreman called the plaintiff to assist him in roping, washing, and turning the belt of the first set of press rolls. The machine was short one hand at the time, and the crew were hurrying to finish work before midnight. The plaintiff had never assisted at

that kind of work previously, excepting on. one occasion, when he operated the lever to reduce the speed of the machine so that the belt could be turned over; and at that time he stood in such a position that the press rolls were between him and the other employees and interfered with his view of the operation. He had assisted once in putting in a new belt, but the machinery was stopped and partially taken apart at the time. He had seen belts of the other paper machine roped, washed, and turned on two or three occasions, but paid no particular attention to the process. He had assisted in taking the paper from the driers to the stacks at the back end of the machine, while the paper was passing "through a number of rolls." On the night of the accident the foreman sent the back tender to do the work which the plaintiff ordinarily did, and ordered the plaintiff to go to the back side of the machine and raise the spread roll, so it could be taken out. This was done; and thereupon the plaintiff, in compliance with the foreman's direction, assisted the latter in roping the belt. Water was then allowed to flow upon the belt for about ten minutes. The foreman then took hold of the far edge of the belt from the upper side and pulled, and told the plaintiff to take hold of the other edge from the under side and pull. The plaintiff did as he was directed, his hand being under the belt where he could not see it and the belt hanging upon his arm. His hand was drawn over the second wooden roll and on between the press rolls, and was injured.

The place was well lighted. The plaintiff was not warned of any special danger. He could see the rolls. He knew that they were moving, that the felt belt was moving "fairly fast," and that if he got his hand between the press rolls it would be injured. He kept hold of the belt until his hand was caught by the press rolls. There was nothing which attracted his attention to the liability of injury. The only negligence relied upon by him was the defendants' failure to warn him of the danger of his hand being drawn between the rolls, which he claimed he did not know of and appreciate.

*Frank H. Brown* and *Albert S. Wait*, for the plaintiff.

*Hosea W. Parker* and *Streeter & Hollis*, for the defendants.

CHASE, J. This case so closely resembles *O'Hare v. Cocheco Mfg. Co.*, 71 N. H. 104, that it must result as that case resulted. In this, as in that case, the only negligence with which the defendants are charged is their failure to warn the plaintiff of the dan-

gers incident to his service. As in that case, so in this, the dangers were obvious; and if the plaintiff did not know of and appreciate them, the fact was due to his want of ordinary care.

The plaintiff was a man of mature age and average intelligence. He had worked about the machine which caused his injury ten weeks. Although his duties did not pertain to the particular part of the machine where he was injured, he must have acquired a general knowledge of the machine and its operation. His description of them upon the witness stand shows this. If this knowledge, together with the knowledge acquired from his observation of the process of washing and turning the belts of press rolls on two or three occasions, and from his experience in assisting in putting in a new belt, were not sufficient to inform him of the dangers attending the process of turning belts, it is inconceivable that he could have failed to learn of such dangers as he stood by the machine the night of his injury and attempted to assist in the process, unless he failed to make such use of his senses and faculties as a person of average prudence would make under such circumstances. If he exercised ordinary care, he must have acquired knowledge of the dangers before he took hold of the belt to assist in turning it. The place was well lighted. The belt was moving "fairly fast" toward and between the revolving rolls which pinched it as it passed. This was taking place directly before, and within three or four feet of, his eyes. He knew that the belt and press rolls were in motion, and that his hand would be injured if it was caught by the rolls. Although he could not see his hand when under the belt, he could not have been unconscious of the fact when it moved toward the rolls. He must have known that the belt would carry his hand to the rolls if he held on to it, and that the only way to escape injury was to release his hold seasonably. There is no evidence that it would be difficult to do this, or that special precautions were necessary. Nor is there any definite evidence as to the speed of the belt, so that it could be inferred therefrom that one taking hold of it could not subsequently let go in season to avoid injury.

If there was special danger in the process not apparent to the observation of an unskilled workman, or if special skill was required to enable one to do the work in safety, the defendants' failure to warn or instruct the plaintiff might be found to be the cause of the injury. But the burden of proof was upon the plaintiff, and the absence of evidence in relation to these matters does not sustain that burden. The mere fact of injury does not establish the defendants' fault. If the absence of proof is due to mistake or misfortune, justice can hereafter be done upon proper proceedings in the superior court; but the possibility of evidence cannot sus-

tain a verdict rendered without evidence upon an essential point. As the evidence stands in the record, there was no concealed danger in the operation. The defendants could not have told the plaintiff anything about the danger which he did not learn from his observation, or would not have learned if he had exercised ordinary care. The machine itself, by the character and motion of its parts, continuously warned him of the dangers to which it exposed him, as fully and forcibly as human language could have done. The plaintiff, by his contract of service with the defendants, took upon himself the risk of injury from these dangers, and consequently has no right of action against them for the injury he has suffered therefrom. The defendants' motion should have been granted.

*Exceptions sustained : verdict set aside.*

YOUNG, J., dissented : the others concurred.