William Knox, an Infant, etc., Respondent, *v.* The Hall Steam Power Company, Appellant.

*Freight elevator — injury received by falling down the shaft — intention of using it as a passenger elevator, without right — breakage of a chain across the shaft opening — contributory negligence.*

In an action brought by a boy about twelve years old, against the party upon whom devolved the care and management of an elevator in a building used for manufacturing purposes, to recover damages for personal injuries sustained by falling down the elevator shaft, the evidence showed that the elevator was a freight and not a passenger elevator, although persons sometimes rode upon it accompanying freight or by permission of the elevator boy ; that there were stairs throughout the building ; that the shaft openings were guarded by gates which could be opened from either side, and also by a chain held across by a hook.

The plaintiff, who was in the employ of a tenant of an upper floor of the building, testified that on being sent out on an errand, which it appeared did not require or entitle him to the use of the elevator, he went to the shaft and, the gates being open, threw his weight upon the chain and looked over to see if the elevator was coming, instead of shaking the elevator rope, which it appeared he knew was the usual means of summoning the elevator ; that the chain broke

with his weight and he fell down the shaft, receiving the injuries complained of.

*Held*, that in deliberately placing himself in danger by putting his weight upon a chain which was not intended for that purpose, in an attempt to use the elevator without right, the plaintiff was guilty of contributory negligence.

APPEAL by the defendant, the Hall Steam Power Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 11th day of May, 1892, upon a verdict rendered at the New York Circuit, and from an order entered on the 16th day of May, 1892, denying the defendant's motion for a new trial made upon the minutes, and entered in said clerk's office on the 16th day of May, 1892.

*James Dunne*, for the appellant.

*James M. Smith*, for the respondent.

O'BRIEN, J.:

This action was brought by plaintiff, a boy about twelve years old, to recover damages for injuries sustained in falling down an elevator shaft on premises leased by defendant. In the building was a freight elevator, the care and management of which devolved on defendant, and which was used by the several tenants who occupied portions of the premises. In front of the opening to the shaft was a chain fastened by a hook, and in addition two iron gates about six feet high, which could be opened when needed for placing freight on the elevator, and when not so needed could be closed. These gates when closed were fastened with a piece of iron, hook shaped, which could be removed from either the inside or the outside of each landing, and when removed would permit of the opening of the gates. The building was also provided from top to bottom with a staircase connected with each floor, and affording the means to tenants and their employees of reaching their several floors. The manner in which the elevator was constructed and the uses to which it was put, as shown by all the witnesses, demonstrates that it was a freight and not a passenger elevator, and while it is true that frequently tenants or their employees rode upon such elevator, their presence there was usually in connection with freight which they

were engaged in taking up to or down from the various floors in the building. Occasionally, too, the elevator boy would permit other boys, or even tenants, to ride on the elevator, in which, however, there was a cardboard sign bearing the following printed notice : " This is not a passenger elevator ; all persons riding on it do so at their own risk." The elevator boy testified that this sign had been called to the attention of the plaintiff ; but without attaching any weight to this testimony, which was denied by plaintiff, we have the plaintiff's own statement to the effect that the elevator boy sometimes prevented him from riding on the elevator, and compelled him to walk up the stairs, and that when he did ride it was only after obtaining the elevator boy's consent. Plaintiff was asked if he had ever been told by his employer to ride on the elevator, to which he made answer : " Yes, if I had any freight with me, he told me." Plaintiff's employers occupied a portion of the fourth floor of the building, and were engaged in the manufacture of looking glasses, and plaintiff's occupation consisted of sweeping about the premises and running errands.

With these facts showing the character of the building, occupied as it was by persons engaged in manufacturing or similar business, and the construction of the elevator, the guards placed about it on each floor and the use to which it was applied in moving freight for tenants, we are brought to a consideration of the question of defendant's responsibility for the injuries suffered by plaintiff under the circumstances narrated by him.

The plaintiff testified that at ten o'clock in the morning he was going out for beer ; that he did not go on the stairs and " rattle the chain " — which was the means resorted to by those who desired to attract the attention of the boy in the elevator for the purpose of having it either hoisted or lowered — but that, finding the gates which protected the elevator shaft open, he went toward the shaft and looked over the chain to see if the elevator was coming up ; that he leaned on this chain, and as he did so it broke ; that he held on to it until " it slapped me against the wall and I let go of it, and it knocked me down four stories." He further testified that he went for beer three times a day ; that he rode on the elevator, but that sometimes the elevator boy would refuse to let him ride, and

that then he walked.   The chain upon which the plaintiff leaned was fastened by a hook which was so placed that it could be removed and let down when necessary for the purpose of permitting freight to be taken on or off the elevator.   He further testified that on occasions 'when he either got on or off the elevator the gates were shut by the elevator boy, who also put the chain up.

By plaintiff's witness, one of his employers, it was shown that on the evening before the accident the gates on that floor were closed and fastened, and that next morning prior to the accident they were in the same condition.   No testimony was given to show that these gates were left open by defendant's employees, nor was there any testimony in the case showing just how the gates, which were closed prior to the accident, happened to be open at the time the plaintiff was proceeding on his errand.   He testified that when he went out the doors were open, but, as stated, his employer testified that when he saw the gate that morning it was locked, and that one standing on the landing could open the door by lifting the latch from the inside and the outside; "this was a regular steel wire; it may have been iron."   This testimony, therefore, did not furnish proof of negligence on the part of defendant in leaving such gates open, and this ground may be disregarded.

Apart, however, from the gates being open, it was shown that the proximate cause of the injuries was the imperfect and defective condition of the hook to which the chain was attached upon which the plaintiff leaned.   The only notice of such defect brought home to defendant was the fact that the day before the elevator boy called the attention of the engineer of the building to the insecurity of such hook.   That defendant had actual notice of the defective hook is not claimed, and it is doubtful if this evidence is sufficient to prove constructive notice of such defect or to present the question of defendant's negligence.   But assuming such to be the case, there is the remaining question as to whether or not the burden placed upon the plaintiff of showing freedom from contributory negligence was sustained.   The plaintiff was over eleven years old, and, according to the testimony, had gone to different schools seven years, and was regarded as a bright boy, "pretty smart when he went to work in that building."   One of the witnesses testified respecting plaintiff that he found him an exceedingly intelligent boy.

And as shown by the plaintiff's own examination, he was familiar with the methods employed to summon the elevator, and knew the uses to which it was applied. Notwithstanding such knowledge, he purposely refrained from either walking down the stairs or, if he was desirous of soliciting a ride, summoning the elevator by going up on the steps and shaking the elevator rope or chain, but, the gates protecting the elevator being open, he saw fit to place his weight upon the chain and look down the shaft to ascertain if the elevator was coming up.

As said in *Greany* v. *Long Island R. R. Co.* (101 N. Y. 423): "It would. be error for a trial court to grant a nonsuit if by any allowable deduction from the facts proved a cause of action might be sustained by the plaintiff, and when such a ruling has been upheld by reason of the contributory negligence of the person injured, it appeared that such negligence was conclusively established by evidence which left nothing either of inference or of fact in doubt or to be settled by a jury." Upon appeal, for the purpose of sustaining a judgment, the court will indulge in every fair inference or presumption, and where, as here, the question relates to whether or not there was sufficient evidence as to plaintiff's freedom from. contributory negligence, the rule just referred to should be applied. But applying this rule, which is as strongly in plaintiff's favor as language could express it, to the facts as shown by the plaintiff's own testimony, we fail to see how this judgment can be sustained. No inference that can be drawn from the testimony and no presumption that can be indulged in is consistent with the exercise of that care and prudence which the law exacts from a boy of the age and intelligence of the plaintiff. At the time of the accident he was not engaged in handling any freight for his employers, but had been sent upon an errand for beer, which should have been discharged by going down the stairs, instead of waiting to see if he could obtain permission from the elevator boy to ride. This latter desire was seemingly so strong with him that, disregarding the ordinary precautions of prudence and care, he proceeded to the elevator shaft and leaned the weight of his body upon a chain for the purpose of looking down and ascertaining if the elevator was coming up. Such conduct cannot be regarded as furnishing evidence that he was free from negligence that contributed to his injuries, but on the contrary,

we fail to see why his leaning upon the chain did not constitute negligence on his part in depending upon the security of an appliance on which, under the circumstances shown, he had no right to rely.

Had this been a passenger elevator for the use of tenants in the building and their employees, then there might be some argument based upon the claim that the failure to provide suitable and properly secured chains or other safeguards across the opening was such negligence that one who had a right to use such elevator, and who, relying on the invitation and the right to enter upon the same, was injured, could recover the damages which he sustained by the failure to perform the obligations thus imposed upon those having the care and management of such elevator. But where, as here, the plaintiff proceeded to the opening in the elevator shaft, which, when the elevator was not at that floor, was secured by iron gates six feet high, closed and fastened with a latch, and thus deliberately, without having a right when going on errands to ride on such elevator, placed himself in a position of danger, and did more by putting the weight of his body upon a chain which was not intended for that purpose, so that he might look over and down the shaft, we fail to find any such case as justified inferences favorable to the burden which the law places upon a plaintiff of showing freedom from contributory negligence.

Upon this ground the defendant moved for a dismissal of the complaint, and subsequently for a direction in its favor, which motions, having been denied, were duly excepted to, and thus the question which we have discussed was directly presented. Having reached the conclusion that the disposition of these motions made by the trial judge was erroneous, we are of opinion that the judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.