WALTER KNAPP V. ELLIS O. JONES ET AL.

FILED FEBRUARY 3, 1897.   No. 6936.

1. **Damages: CONTRIBUTORY NEGLIGENCE.** In an action for damages alleged to have been produced by the negligence of the defendant in the action, if it appears that the plaintiff's failure to exercise ordinary care under the existing conditions was the cause of the injuries, he cannot recover.

2. **Trial: DIRECTING VERDICT.** If from the undisputed facts different minds might not honestly reach different conclusions or draw different inferences without reasoning irrationally, it is not error on the part of the trial court to withdraw the case from the consideration of the jury and order a verdict consistent with the facts.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.   *Affirmed.*

*Connell & Ives,* for plaintiff in error.

*Breckenridge & Breckenridge, contra.*

HARRISON, J.

The plaintiff, by his next friend, instituted this action in the district court of Douglas county to recover of the defendants damages which he alleged were caused by injuries to him as the result of negligence on the part of the defendants.   The amount claimed was $15,000.   It was stated in the petition that the defendants were the owners and managers of a five-story building in the city of Omaha, the rooms of which, above the ground floor, were occupied and in use as offices by various tenants; that there was a passenger elevator maintained and op-

erated by defendants between the ground floor and upper stories of the building, for the use of tenants and persons having business to transact therein. "The said plaintiff further says that it became and was the duty of the said defendants to use at all times proper and suitable safeguards, appliances, care and skill in the maintenance, repairing, and operation of their said elevator, but that the said defendants, contrary to their said duty, were guilty of such negligence as to the use of proper and suitable appliances and safeguards, and as to the use of care and skill in the maintenance, repairing, and operation of the said elevator, that the plaintiff, by reason thereof, on or about the 14th day of January, 1893, then and there being lawfully in the vicinity of said elevator, suffered great and permanent injuries." Paragraph 4 of the petition contained a specific description of the injuries to plaintiff, and their effect. The answer of the defendants admitted the ownership of the building and its use and occupancy as alleged in the petition and the running of the passenger elevator, and that the plaintiff had been injured in or about the elevator shaft in the building. It was averred that it was not a duty owed by defendants to plaintiff to protect him from injury, and specifically denied that they had been guilty of any negligence in the particulars stated in the petition. It was further pleaded that the negligence, if any other than that of plaintiff caused the injury, was by one Stevenson, who was under contract with defendants doing certain work at the time in and upon the premises. It was further pleaded that the plaintiff's injuries were resultant from his own negligence. A reply was filed and of the issues joined there was a trial before the court and a jury. At the close of the introduction of the evidence, counsel for defendants moved the court to give the jury a peremptory instruction to return a verdict for defendants. This motion was sustained and the jury was charged as follows: "The jury are instructed by the court that under the law and the evidence in this case you will return a verdict for de-

fendants." From a judgment subsequently rendered for defendants, error proceedings have been prosecuted to this court on behalf of plaintiff. The error assigned and urged is the action of the trial court in giving the instruction we have quoted.

There is no conflict in the evidence as to the injuries to plaintiff, or the conditions, facts, and circumstances under which they occurred. The evidence disclosed that there was a stairway by which persons could go to or come from any of the floors of the building, and which was contiguous to the elevator shaft, as was stated by plaintiff in his testimony:

Q. How near was the stairway to the elevator?

A. Runs right around the elevator, close to it.

Q. Is that the way it goes from the ground floor clear up?

A. Yes, sir.

On and above the third, and extending to the fourth floor, this being the portion directly involved herein, separating the stairway space from that of the elevator shaft, was a wainscoting, or board partition, which, from the floor of the third story, was forty-five inches high; from the top of the first step of the stairway, going to the story above, or fourth, was thirty-eight and one-half inches high, and from the top of the second step, and all intervening ones between the second step and the landing above, was thirty-six inches in height. In the further portion of the space between the stairway and the elevator shaft, and above the partition we have just described, between the third and fourth floors, there generally appeared a diamond-shaped wire screen, which, on the day the plaintiff was injured, had been removed to be painted, there being a man there at work under a contract to clean and paint or varnish the elevator shaft, stairway, etc. The plaintiff was, and had been for some three months, in the employ of a physician whose office was situate on the third floor of the building, and had very frequently used the elevator in going up to the office or down to the lower

floor.   He knew of the wire screens, had noticed them, and saw the workman remove them from the position they occupied in the shaft, including the one between the third and fourth floor.   He testified as to what was done with them when they were taken down, as follows:

Q.  When the wire screens were taken out, as you have told that day, what was done with them?

A.  They were put at the right of the stairway as you go up at the left hand side.

In regard to the weights attached to the elevator he stated:

Q.  Now tell the jury just where they come down and how many of them there are.

A.  There was a piece up here, a plank on each side and there the iron weights slid up and down.   There was eight of these big iron weights.

Q.  And when they came down how close to the rail of the stairs did they run?

A.  Came about a couple of inches.

He further stated that at the time of the injury he did not know of the elevator weights.

The plaintiff was, at the time he was injured, between sixteen and seventeen years of age and was, it was stated by one of the doctors who was testifying in respect to plaintiff's condition and appearance before the injury, "a remarkably bright, clean, healthy, active, energetic, genial, pleasant young fellow."   But this is immaterial. No question has been raised as to youthfulness and consequent lack of discretion on the part of plaintiff.   A few minutes before the noon hour of the 13th of January, 1893, the plaintiff was in the office of the physician, his employer, on the third floor of defendants' building.   The doctor was out of the office and building and the plaintiff was evidently expectant of his return.   However this may have been, the plaintiff left the office rooms through a door which was, relatively to the elevator, immediately across the hallway, stepped over to the elevator shaft, passed the wire screen, which, as we have before seen,

had been removed from its place and was then upon the floor near the stairway, went up to the second step of the stairs and reaching or leaning over the thirty-six inch high board partition or barrier, put his head and the upper portion of his body into the elevator shaft, as he states it, to look at the elevator which was below to see and ascertain whether the doctor was therein, and coming to the office. The elevator was coming up and the weights down. The plaintiff was struck or caught by the weights in their descent and the injuries to him, the basis of this action, resulted.

As we view the proper final disposition of this action, we need not now consider and settle the questions of the duty of landlords to tenants and their employes, or whether proper care would have required that the elevator in defendant's building, during the time of the painting of the shaft, should have been stopped, and not operated while the screens were out of place and until replaced, for we feel forced to the determination that the evidence discloses such want of ordinary care on the part of plaintiff, under the facts, circumstances, and conditions existent and known to him at the time of his injuries, as constituted his acts contributory negligence and without which the injuries would not have been sustained. This was sufficient to bar his recovery. The defendant knew that the elevator was being operated, he had been riding in it that day, and his direct purpose in looking into the shaft was to see the elevator during its trip upward, and whether the doctor was a passenger. He knew of the wire screens which usually formed a part of the enclosure of the elevator shaft, and had seen them removed but a very short time before, temporarily, to be painted, and had watched the progress of the work. He knew the use for which the elevator shaft was prepared and intended, and he was making a use of it for which it was never intended and to which he possessed no right or privilege, and which was dangerous, against which it was usually guarded in all parts by the screens. In order

to effect his purpose he went up to the second step of the stairs and then leaned over the partition three feet high. These, with other facts in evidence, disclosed conclusively such want of ordinary care as to preclude his recovery of damages.   The plaintiff's want of ordinary care and prudence were the cause of the injury, hence he could not recover damages (Whitaker's Smith, Negligence, 226; *Pierce v. Whitcomb*, 48 Vt., 127; *Mau v. Morse*, 33 Pac. Rep. [Colo.], 283); and though both plaintiff and defendant might have been negligent in the premises, the plaintiff could not recover if, by the exercise of ordinary care, he could have avoided the injury. (*Omaha Horse R. Co. v. Doolittle*, 7 Neb., 481; Thompson, Negligence, 1104.)

It is urged that the question of whether or not there was contributory negligence on the part of plaintiff should have been submitted to the jury.   The undisputed facts were such, we think, that different minds might not reach different conclusions or draw different inferences from them in regard to the plaintiff's want of ordinary care and prudence, and the court did not err in not submitting the question to the jury and, on motion of counsel for defendants, charging that body to return a verdict favorable to defendants.   In the opinion in the case of *Slayton v. Fremont, E. & M. V. R. Co.*, 40 Neb., 840, appears the following quotation from section 2267, Thompson on Trials, in reference to an instruction such as was given in the case at bar:   " 'The demurrer to evidence used in the ancient common-law practice seems to have passed, for the most part, out of use in American jurisdictions. In the place of it the defendant moves for a nonsuit, or requests the court to give a peremptory instruction to the jury to return a verdict for the defendant.   In either case the effect is substantially the same as a demurrer to the evidence under the ancient practice.   An order of nonsuit, or a peremptory instruction given in compliance with such a motion, does not undertake to decide any question of fact, but simply pronounces the law arising upon the evidence, admitting the same to be true.   In

this way the court pronounces upon the legal effect of the facts which the evidence may, in the opinion of the jury, prove. If there is no evidence tending to support the allegations of the plaintiff's declaration, petition, or complaint, it is, under all theories of procedure, the duty of the court to instruct the jury that he cannot recover.' " And it is said in the opinion in relation to the rights or duty of the trial judge to give a peremptory instruction as applicable in that particular case and generally: "The instruction was properly given requiring a verdict for defendant. It could have subserved no useful purpose to either litigant to trust that the jury, upon the submission of the entire case to them, would exercise the same discretion as could reasonably be expected of the trial court. There was no evidence on which the verdict could be sustained, and the trial judge did but his duty in so informing the jury. Often the responsibility of determining questions which should be met by the trial judge is devolved in the last instance upon this court. This is sometimes scarcely fair to litigants, for it frequently happens that the question to be determined is surrounded with difficulties in this court from which the trial court has comparative freedom. When the trial judge approves the jury's estimate of the weight of the evidence adduced, there arises a presumption in favor of its correctness, because both the judge and the jury have had opportunities of observing the deportment of the witnesses and their apparent candor, which are denied this court. When the trial judge is satisfied there is no evidence to sustain a verdict it is his duty to so instruct the jury, for in such a case the merits are presented in this court untrammeled by adverse presumptions." This is quite pertinent and forcible in the case at bar, for had the cause been submitted to the jury and a verdict for plaintiff ensued, it would not have been sustained by the evidence. In support of the same proposition see, also, *Dewey v. Chicago & N. W. R. Co.*, 31 Ia., 373; *Davis v. Hilbourn*, 41 Neb., 35; *Central City Bank v. Rice*, 44 Neb., 594.

There were some other matters argued in the briefs of counsel, but we do not deem a discussion or decision of them necessary at this time. The judgment of the district court must be

AFFIRMED.