MARTIN DERRINGER, a Minor, by John Derringer, His Guardian Ad Litem, v. HENRY TATLEY.

(L.R.A.1916, —, 157 S. W. 811.)

Passenger elevator — boy fourteen years old — injury to — protruding head through opening in door — duties — such action not required by — danger — open — obvious — contributory negligence — hazardous position — duty to observe — knowledge of plaintiff.

1. Plaintiff, a fourteen-year-old bell boy, was injured because of protruding his head through an opening in the door of a passenger elevator. His duties which he was performing did not require him to so endanger himself, and could have been performed without any risk. He understood the open and obvious danger that might be the consequence of his act. Assuming negligence in

NOTE.—The duty of a master to warn a minor servant of dangers of which he is already aware is discussed in the note in 29 L.R.A.(N.S.) 111, referred to in the opinion of the above case.

In general on the question of warnings and instructions to infant employees, see

operating the elevator in the condition it was in, and conceding that the same was dangerous, it is, however, *held:*

Plaintiff is not exonerated from his contributory negligence simply because he did not realize his risk assumed, or did not think of what he was doing and observe the hazardous position in which he was placing himself. His employer had the right to expect that he would avoid such open and obvious danger, admittedly known to plaintiff to be such.

**Mental capacity — proof of — contributory negligence — question of law — for court — recovery precluded.**

2. Under the proof as to plaintiff's mental capacity, contributory negligence was a question of law for the court, and precluded his recovery.

Opinion filed March 4, 1916.   Rehearing denied April 27, 1916.

From a judgment of the District Court of Burleigh County, *Nuessle,* J., dismissing this action, plaintiff appeals.

Affirmed.

*George M. Register, F. H. Register,* and *S. E. Ellsworth,* for appellant.

The defendant was negligent in the employing of a young, incompetent, inexperienced boy, fourteen years old, to run or operate the elevator. This was not only negligence and in disregard of his duties to the public, but a direct violation of the statute of this state.   Comp. Laws 1913, § 1412.

Public records kept under the law may be used to impeach the testimony of a witness on the question of his age, and are prima facie evidence of the facts therein recorded.   Comp. Laws 1913, §§ 7917, 7918,

also notes in 43 Am. Rep. 269, 1 Am. St. Rep. 28, and note in 44 L.R.A. 61, on minority as a special factor bearing on master's duty of instruction.

The liability of a master to a servant injured by an elevator is taken up in note in 56 Am. St. Rep. 806.

As to when the contributory negligence of children does not preclude a recovery for injuries to them, see note in 55 Am. Rep. 864.

A master's liability for injury to servant caused by an elevator uninclosed as required by statute or ordinance is discussed in note in 15 L.R.A.(N.S.) 784.

See also note in 29 L.R.A.(N.S.) 487, on presumption and burden of proof as to capacity of minor servant to comprehend and avoid danger, and notes in 48 L.R.A. (N.S.) 667; 12 L.R.A.(N.S.) 461; and 20 L.R.A.(N.S.) 876, on whether one employing child under statutory age may rely on his contributory negligence to defeat liability for personal injuries sustained by him.

7919; Miller v. Northern P. R. Co. 18 N. D. 19, 118 N. W. 344, 19 Ann. Cas. 1215; 3 Wigmore, Ev. ¶ 2, §§ 1630, 1633; 1 Greenl. Ev. 16th ed. §§ 483, 484, 493; 1 Whart. Ev. §§ 347, 639; 9 Am. & Eng. Enc. Law, 2d ed. 882, 883; 17 Cyc. 306, and cases cited.

In personal injury action the question of the competency of the servant and whether the master was negligent in employing or retaining him with knowledge of his incompetency are questions of fact for the jury, where there is evidence to show such facts. 26 Cyc. 1476; Carlson v. Wilkeson Coal & Coke Co. 19 Wash. 473, 53 Pac. 725; Wabash R. Co. v. McDaniels, 107 U. S. 454, 27 L. ed. 605, 2 Sup. Ct. Rep. 932; Southern P. Co. v. Huntsman, 55 C. C. A. 366, 118 Fed. 412, 13 Am. Neg. Rep. 238; Mares v. Northern P. R. Co. 3 Dak. 336, 21 N. W. 5; Lee v. Michigan C. R. Co. 87 Mich. 574, 49 N. W. 909.

The court erred in admitting evidence over objection, tending to show that some time prior to the accident plaintiff showed evidences of intoxication. No witness pretended to testify as to his condition in this respect at the time he went on duty as a bell boy. Denver Tramway Co. v. Reid, 4 Colo. App. 53, 35 Pac. 269, 2 Am. Neg. Rep. 248; Gove v. Tacoma, 34 Wash. 434, 76 Pac. 73.

The defense that plaintiff assumed the risk incident to the employment is an affirmative defense, and should be specially pleaded. It can only be available when pleaded. 13 Enc. Pl. & Pr. 914, and cases cited under note 1; 14 Am. & Eng. Enc. Law, 844; Mayes v. Chicago, R. I. & P. R. Co. 63 Iowa, 562, 14 N. W. 340, 19 N. W. 680; Hulehan v. Green Bay, W. & St. P. R. Co. 68 Wis. 520, 32 N. W. 529; Louisville & N. R. Co. v. Orr, 84 Ind. 50; Oregon Short Line & U. N. R. Co. v. Tracy, 14 C. C. A. 199, 29 U. S. App. 529, 66 Fed. 931; Walker v. McNeill, 17 Wash. 582, 50 Pac. 518; Faulkner v. Mammoth Min. Co. 23 Utah, 437, 66 Pac. 799; Boin v. Spreckles Sugar Co. 155 Cal. 612, 102 Pac. 937; Mosher v. Sutton's New Theatre Co. 48 Mont. 137, 137 Pac. 534; Konig v. Nevada-California-Oregon R. Co. 36 Nev. 181, 135 Pac. 141; Sankey v. Chicago, R. I. & P. R. Co. 118 Iowa, 39, 91 N. W. 820.

Children after they have passed the age of seven years may be guilty of contributory negligence; but this fact is a question for the jury. Cleveland, C. C. & St. L. R. Co. v. Scott, 111 Ill. App. 234; 29 Cyc. 535, 540, 642 (2) (11), and cases cited; Tucker v. New York C. & H.

R. R. Co. 124 N. Y. 308, 21 Am. St. Rep. 670, 26 N. E. 916; Nagle v. Allegheny Valley R. Co. 88 Pa. 35, 32 Am. Rep. 413; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; Atchison, T. & S. F. R. Co. v. Hardy, 37 C. C. A. 359, 94 Fed. 294; Washington & D. R. Co. v. Gladmon, 15 Wall. 401, 21 L. ed. 114; Baltimore & P. R. Co. v. Cumberland, 176 U. S. 232, 44 L. ed. 447, 20 Sup. Ct. Rep. 380; Northern P. R. Co. v. Heaton, 111 C. C. A. 550, 191 Fed. 24; Shebeck v. National Cracker Co. 120 Iowa, 414, 94 N. W. 930.

In the case of a child, it is the duty of the master to see that he does not assume risks outside of the scope of his employment. Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; Thompson v. Johnston Bros. Co. 86 Wis. 576, 57 N. W. 298; Shebeck v. National Cracker Co. 120 Iowa, 414, 94 N. W. 932; Murray v. Chicago, R. I. & P. R. Co. 152 Iowa, 732, 133 N. W. 123; Barrow v. B. R. Louis Lumber Co. 14 Idaho, 698, 95 Pac. 682, 26 Cyc. 1454.

*Niles & Koffel* and *Miller & Zuger,* for respondent.

The complaint does not contain a statement of facts sufficient to constitute a cause of action. There is no allegation that the opening in the door of the passenger elevator was dangerous. It may have been so high as to be out of reach of persons standing on the floor, so far as is disclosed by the complaint. 14 Enc. Pl. & Pr. 340, note 1; Peake v. Buell, 90 Wis. 508, 48 Am. St. Rep. 946, 63 N. W. 1053.

Where the facts are clear, and where there is no controversy as to them, and from such facts it clearly appears what course a person of ordinary prudence will pursue under the circumstances, the question of negligence is purely one of law. Fernandez v. Sacramento City R. Co. 52 Cal. 45; Denver & R. G. R. Co. v. Ryan, 17 Colo. 103, 28 Pac. 79, 11 Am. Neg. Cas. 232; Flemming v. Western P. R. Co. 49 Cal. 253, 11 Am. Neg. Cas. 193; Donaldson v. Milwaukee & St. P. R. Co. 21 Minn. 293; Brown v. Milwaukee & St. P. R. Co. 22 Minn. 165.

A person's youth does not necessarily absolve him from being charged with contributory negligence. Guichard v. New, 9 App. Div. 485, 41 N. Y. Supp. 456.

No actionable negligence on the part of defendant is shown. The injury is wholly the result of plaintiff's negligence. Knapp v. Jones, 50 Neb. 490, 70 N. W. 19, 1 Am. Neg. Rep. 306.

"Whenever a copy of a writing is certified for the purposes of evi-

dence, the certificate must state in substance that the copy is a correct copy of the original." The authority of the certifying officer is limited to this. Comp. Laws 1913, § 7920; Sykes v. Beck, 12 N. D. 242, 96 N. W. 844.

The charge of the court did not relate to the assumption of the risk by plaintiff as to dangers inherent in his employment, but as to the assumption of risk relating to his act in protruding his head through the opening in the elevator door. Baltimore & O. R. Co. v. Depew, 40 Ohio St. 127; Day v. Toledo, C. S. & D. R. Co. 42 Mich. 523, 4 N. W. 203; Mackey v. Newbury Furnace Co. 119 Mich. 552, 78 N. W. 783; King v. Ford River Lumber Co. 93 Mich. 172, 53 N. W. 10; Monforton v. Detroit Pressed Brick Co. 113 Mich. 39, 71 N. W. 586; Borck v. Michigan Bolt & Nut Works, 111 Mich. 129, 69 N. W. 254.

The court's action in directing a verdict for the defendant was proper. The evidence clearly shows that the alleged default of defendant was not the proximate cause of the injury. Grand Forks v. Paulsness, 19 N. D. 293, 40 L.R.A.(N.S.) 1158, 123 N. W. 878; Heckman v. Evenson, 7 N. D. 178, 73 N. W. 427; Morrison v. Lee, 16 N. D. 377, 13 L.R.A.(N.S.) 650, 113 N. W. 1025; Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 337, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; McGinnis v. Canada Southern Bridge Co. 49 Mich. 466, 13 N. W. 819.

Plaintiff's want of ordinary care and prudence was the cause of the injury, and he cannot recover damages. Pierce v. Whitcomb, 48 Vt. 127, 21 Am. Rep. 120; Mau v. Morse, 3 Colo. App. 359, 33 Pac. 283; Omaha Horse R. Co. v. Doolittle, 7 Neb. 481, 4 Am. Neg. Cas. 824; Thomp. Neg. § 1104; Ballou v. Collamore, 160 Mass. 246, 35 N. E. 463; Hoehmann v. Moss Engraving Co. 4 Misc. 160, 23 N. Y. Supp. 787; Bremer v. Pleiss, 121 Wis. 61, 98 N. W. 945, 16 Am. Neg. Rep. 275.

Contributory negligence of the plaintiff, however slight, precludes his recovering damages, even though defendant was negligent. Bolin v. Chicago, St. P. M. & O. R. Co. 108 Wis. 333, 84 N. W. 446, 81 Am. St. Rep. 911, 9 Am. Neg. Rep. 209; Toomey v. Eureka Iron & Steel Works, 89 Mich. 250, 50 N. W. 850; Redmond v. Delta Lumber Co. 96 Mich. 545, 55 N. W. 1004; Mitchell v. Chicago & G. T. R. Co. 51 Mich. 236, 38 Am. Rep. 566, 16 N. W. 388, 4 Am. Neg. Cas. 37;

Stern v. Michigan C. R. Co. 76 Mich. 591, 43 N. W. 587; Schindler v. Milwaukee L. S. & W. R. Co. 77 Mich. 136, 43 N. W. 911; Smith v. Peninsular Car Works, 60 Mich. 501, 1 Am. St. Rep. 542, 27 N. W. 662, 16 Am. Neg. Cas. 42; Manning v. Chicago & W. M. R. Co. 105 Mich. 260, 63 N. W. 312; Arzt v. Lit, 198 Pa. 519, 48 Atl. 297; Patterson v. Hemenway, 148 Mass. 94, 12 Am. St. Rep. 523, 19 N. E. 15; Freeman v. Glens Falls Paper Mfg. Co. 70 Hun, 530, 24 N. Y. Supp. 403; McDonald v. Dutton, 198 Mass. 398, 84 N. E. 434; Ford v. Tremont Lumber Co. 123 La. 742, 22 L.R.A.(N.S.) 917, 131 Am. St. Rep. 370, 49 So. 492; Pilucki v. Detroit Steel & Spring Works, 117 Mich. 111, 75 N. W. 295; Borck v. Michigan Bolt & Nut Works, 111 Mich. 129, 69 N. W. 254; Monforton v. Detroit Pressed Brick Co. 113 Mich. 39, 71 N. W. 586; Journeaux v. E. H. Stafford Co. 122 Mich. 396, 81 N. W. 258; Thorsen v. Babcock, 68 Mich. 523, 36 N. W. 723; Prentiss v. Kent Furniture Mfg. Co. 63 Mich. 478, 30 N. W. 109; King v. Ford River Lumber Co. 93 Mich. 172, 53 N. W. 10; Jayne v. Sebewaing Coal Co. 108 Mich. 242, 65 N. W. 971; Lendberg v. Brotherton Iron Min. Co. 97 Mich. 443, 56 N. W. 846; Sakol v. Rickel, 113 Mich. 476, 71 N. W. 833; Lamotte v. Boyce, 105 Mich. 545, 63 N. W. 517; Perlick v. Detroit Wooden-Ware Co. 119 Mich. 331, 78 N. W. 127; Juchatz v. Michigan Alkali Co. 120 Mich. 654, 79 N. W. 907; Lindstrand v. Delta Lumber Co. 65 Mich. 254, 32 N. W. 427; Wilson v. Michigan C. R. Co. 94 Mich. 20, 53 N. W. 797; Johnson v. Hovey, 98 Mich. 343, 57 N. W. 172; Melzer v. Peninsular Car Co. 76 Mich. 94, 42 N. W. 1078; Mackin v. Alaska Refrigerator Co. 100 Mich. 276, 58 N. W. 999.

"A bright boy of fourteen years could see and appreciate the danger of being caught by a knife that moved slowly in plain view, as well as could an adult." Malsky v. Schumacher & Ettlinger, 7 Misc. 8, 27 N. Y. Supp. 331.

In his employment and the work he was to do, there were no dangers to which plaintiff was exposed, and defendant had performed every duty he owed to plaintiff. Guggenheim v. Lake Shore & M. S. R. Co. 66 Mich. 150, 33 N. W. 161; O'Leary v. Brooks Elevator Co. 7 N. D. 557, 41 L.R.A. 677, 75 N. W. 919, 4 Am. Neg. Rep. 451.

The burden of overcoming contributory negligence was on plaintiff. Rapp v. Sarpy County, 71 Neb. 385, 98 N. W. 1042, 102 N. W. 242;

Union Stock Yards Co. v. Conoyer, 41 Neb. 617, 59 N. W. 950; Omaha Street R. Co. v. Martin, 48 Neb. 65, 66 N. W. 1007; Yerkes v. Sabin, 97 Ind. 141, 49 Am. Rep. 434.

The plaintiff was of sufficient age so that the law cast upon him the duty to guard against open and obvious dangers, and to use care and prudence. Especially is this true where such dangers are not in any way connected with his employment, or with any duty which his employer owed to him. Beghold v. Auto Body Co. 149 Mich. 14, 14 L.R.A. (N.S.) 609, 112 N. W. 691; Woods v. Kalamazoo Paper Box Co. 167 Mich. 514, 133 N. W. 482; Sterling v. Union Carbide Co. 142 Mich. 284, 105 N. W. 755; Woolf v. Nauman Co. 128 Iowa, 261, 103 N. W. 785, 18 Am. Neg. Rep. 405; Cress v. Philadelphia & R. R. Co. 228 Pa. 482, 32 L.R.A.(N.S.) 409, 77 Atl. 810, 21 Ann. Cas. 142; Christopherson v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 128, L.R.A.1915A, 761, 147 N. W. 791; Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Ewing v. Lanark Fuel Co. 65 W. Va. 726, 29 L.R.A.(N.S.) 487, 65 S. E. 200; McIntosh v. Missouri P. R. Co. 58 Mo. App. 281.

Goss, J. Action to recover damages alleged to have been received through the negligence of the defendant. The answer is a general denial with a plea of contributory negligence. The defendant, owner of the Grand Pacific Hotel in Bismarck, in September, 1912, installed therein a passenger elevator. Its use was begun September 30th and this accident occurred October 6th. On account of two glass panels or guards to be set in the two doors to the elevator shaft on each floor, not arriving, the elevator was operated temporarily without them. During such interval the plaintiff was injured in its operation. The complaint sets forth these facts with particularity, and that the elevator as so used "was highly dangerous and liable to cause serious injury to the body or limbs of any person coming in collision or close contact" with the steel elevator cage moving the elevator shaft; and negligence is charged in permitting it to be operated. It is charged that plaintiff was an employee of said hotel, and, while in the discharge of his duties, "plaintiff not knowing and without warning that he was through said barrier (the hole in one of the doors) passed his head beyond said opening in the upper part of said sliding door and within said elevator. While he was so stand-

34 N. D.—4.

ing and in the discharge of his duty, speaking to Peter Boehm (another bell boy, employee) said operator Stenberg (elevator boy) unskilfully, carelessly, negligently, and without any indication whatever to plaintiff of his intention, put said elevator in motion downwards toward the basement of said building, and the arch upon the front of the hood or upper part of said passenger elevator, descending with great speed and without warning to plaintiff, caught his head between said arch and the bar across the bottom of the open space in said sliding door, and with great force and violence crushed, tore, and lacerated plaintiff's head and face," inflicting permanent injuries described. The complaint also alleges that the elevator boy at the time was under the age of sixteen years, and that the statute prohibiting the employment of minors under sixteen years of age was being violated by the defendant at the time, and a recovery is sought on said grounds, as well as upon common-law negligence.

At the close of the evidence the court was requested to take the case from the jury and direct a verdict of dismissal on the grounds of failure of proof and because contributory negligence was established. This the court refused to do, preferring to submit all issues to the jury, and thereafter, if necessary, pass upon the question under a motion for judgment notwithstanding the verdict, should one be made. However, the jury failed to agree, whereupon the court granted the motion for a directed verdict of dismissal. From the judgment thereon plaintiff appeals.

The injury occurred on the ground floor of the hotel at the entrance to the elevator. Plaintiff, a boy past fourteen years of age, was severely injured. He had been employed around the hotel off and on for a year or more, and for six or seven months next prior to the accident had worked continuously as bell boy, except that some four weeks next prior to September 30th he had not been at work or around the hotel, having been temporarily absent. He thoroughly understood the hotel and his duties. He knew that the glass guards were not in the doors opening into the elevator shaft. He knew the operation of the elevator and understood the movement of the cage within the elevator shaft. His duties were those of the ordinary elevator bell boy; to answer calls, look after the convenience of guests, and work as otherwise directed. Three bell boys were employed, two at the time being on duty, this plaintiff

and one Peter Boehm. Peter had just a moment before gotten into the elevator at the third floor, and descended with the elevator boy to the ground floor *en route* to the basement in the performance of his duties, to there turn out the lights. It was between 8 and 8:30 o'clock in the evening of October 6, 1912. The hotel was filled with guests. It was the duty of Peter and Martin to answer bells, and in so doing to go to rooms registered on the indicator. Just at this time two bells rang in different parts of the house. Martin noticed the numbers indicated, tripped the indicator, and turned to give one of the numbers to Peter to look after while he answered the other. At that moment the elevator descended bearing Peter and the elevator boy, Henning Stenberg, and as it came to the floor Martin was either awaiting it or at that instant approached it. It stopped, but with the doors opening into the elevator remaining closed. But as the interior of the elevator cage was lighted, Martin knew it was down, and, while it was thus remaining stationery but with the doors into it closed, Martin stuck his head through one of the openings through the doors where the glass had not been installed. This aperture in the door began 42 inches from the floor, was 10 inches wide, and extended 36 inches upward, constituting an open panel 10x36 inches in size. The elevator cage that carried the passengers up and down had no door on it, the doors to the elevator shaft being the door to the elevator. When plaintiff protruded his head through the opening in the door, the elevator cage with the two boys, Peter and Henning in it, was stationery. Martin says the reason he approached there was to tell Peter the number of the bell for one of the rooms, and that he told him to attend to that room; and that he went close to the elevator because there were too many people around and it was too noisy to tell him without so doing, although he says he could have given him instructions without putting his head through the opening.

Concerning this he was asked and gave the following answer:

Q. Now was it necessary for you to insert your head in that closed door in order to get close enough to tell him that you had a call?

A. No, it wasn't necessary; I didn't realize any danger, though.

Peter refused to take the order to attend to the room mentioned and ordered the elevator boy to go on down to the basement.

Concerning this plaintiff testifies:

Q. Now I would like to know, and I would like to have you tell the jury, what particular thing it was that made you lean over and stick your head in between those bars?

A. To get closer to Pete.

Q. Well, Pete was just inside the bars, wasn't he?

A. He was in there about 3 feet.

Q. And the elevator was standing still?

A. Yes, sir.

Q. And so far as you knew there was no intention to move it, was there?

A. No, sir. Not then. But Peter said to Henning "let her down." That was right there at that time.

Q. That was after you had your head in there?

A. Yes, sir.

Immediately after this the cage descended and the top of it caught plaintiff's head at the back beyond the crown, and jammed his head and face down against the bar across the door, 42 inches above the floor. The cage was brought to a standstill, and plaintiff released severely injured. In explanation of why he had his head inside of the elevator shaft, plaintiff has testified that he did not know there was any danger there, and "did not know that his head was within that opening in the door as he stood there," and did not sense that such was the fact until the descending elevator struck his head. When asked, "Why didn't you take your head out?" he answers, " I didn't know I had my head in." The undisputed evidence shows that the top of the hood operates within, at the nearest, 3 inches to the inside of the door, so that his head could have been 3 inches within the elevator shaft and still not been touched by the descending elevator cage. As it was, his head must have protruded at least 10 or 12 inches inside the opening in the door and that far from the perpendicular. Plaintiff was 5 feet 3 inches, or 63 inches in height, so that exactly ⅔ of his height was below the bottom of the opening, which was 42 inches above the floor upon which he was standing. The 21 inches of his head and shoulders above the bottom of the opening in the door and 42 inches from the floor then must have been bent or thrust at an angle of approximately 90 degrees into the

elevator cage. Otherwise, plaintiff would not have been caught at the place on the back of his head that was hit by the descending elevator. He could not have known but that his head was within the elevator shaft and in danger had he been thinking, or had he sensed the situation. In all probability he could not have gotten his head through this ten-inch opening and into the position it must have been in without some effort. The foregoing is based upon the plaintiff's testimony, and views the facts in the most favorable light to his cause. The following is the testimony of Stenberg, the elevator boy:

"Well, the elevator bell rang on the third floor, and I went up there, and it was Peter Boehm, and I took him down and was going down and I see Martin Derringer leaning up against the elevator,—against the wall there,—and I stopped and he started to talk to Peter about some bell, I think it was 118, and they were talking there, and pretty soon another bell rang, and Martin turned his head away, and I went down to the basement,—started down. I heard him holler, and reversed the elevator, and when I got up he was lying there on the floor." On cross-examination he states that Martin was standing in front of the opening when the elevator came down, and started talking with Peter about the bell at room 118, when the bell in another room rang and Peter told him (witness) to go on down, which he did.

Q. And you thought Martin had turned away?

A. Yes, sir.

Q. You didn't see him at the time you started down, that he had his head through the opening?

A. He didn't have his head in there.

Q. He didn't?

A. No.

Q. Well, you know a little later he got his head caught between the hood of the elevator and the bar on that door?

A. Yes.

Q. And you say he didn't have his head in there when you started down?

A. No, sir; didn't have it in there when I started down.

This testimony is entirely consistent with that of plaintiff as to the facts. Plaintiff understood the mechanism of the elevator and has de-

scribed how it was operated; he had been instructed in its operation and knew how to use it and had used it. It is also admitted that at the time in question it was not a part of his duty to use the elevator to answer calls to rooms, but instead that he had been positively forbidden to use the elevator for such purposes and ordered to use the stairs instead, as all the bell boys had been instructed to do. He has also testified that it was not part of his duties to give orders to Peter, and that the hotel clerks gave orders to the bell boys. But as perhaps the testimony is sufficient to establish that at the time in question he was performing a duty in directing Peter to answer the bell for room 118, it will be assumed that he was acting in the line of his duties in such respect.

The question first arising is whether plaintiff was guilty of contributory negligence in inserting his head through the opening in the door and within the elevator shaft, assuming that he did not realize either the danger or that he had protruded his head within the elevator cage. Resolving all reasonable inferences in his favor the facts of the situation speaking for themselves conclusively establish that, without thinking what he was doing or sensing the danger that was known and understood by him, or what should have been plainly apparent, he nevertheless voluntarily, though thoughtlessly, placed himself in the dangerous position described and in which but a moment later he was injured. Must plaintiff he held guilty of contributory negligence precluding his recovery? Every text writer and every adjudicated case anywhere nearly parallel on facts and on principle answer in the affirmative, and this, too, in spite of plaintiff's youthfulness. The opinion from Cronin v. Columbia Mfg. Co. 75 N. H. 319, 29 L.R.A.(N.S.) 111, 74 Atl. 180, is closely parallel in fact. It reads: "The plaintiff admitted in his testimony that he knew at the time of his injury that if he allowed his foot to extend beyond the guard it would hit the floor above when the elevator went up through, but he testified that he was not thinking of the situation at that time. He was a boy of average intelligence and about fourteen years of age, who it appears understood the situation and appreciated the danger. It was unnecessary, therefore, for the defendant to instruct him that it would be dangerous for him to allow any part of his person to extend beyond the guard when the elevator was in motion. Hicks v. Claremont Paper Co. 74 N. H. 154, 157, 65 Atl. 1075.

Knowing the situation and appreciating the danger, he must be held to have assumed the risk he incurred. His only excuse is that he *'did not think.'* But it was his duty to think, and, in view of his knowledge, to use such care including the mental operation of some thought as a boy of his intelligence would exercise under the circumstances. It was not the defendant's duty to tell him to think. Gorman v. Odell Mfg. Co. 75 N. H. 123, 71 Atl. 215. He was confessedly 'thoughtless and careless when his duty to the' defendant 'as well as to himself required him to be thoughtful and careful.' Gahagan v. Boston & M. R. Co. 70 N. H. 441, 446, 55 L.R.A. 426, 50 Atl. 146, 149. 'The obligation to exercise care is not satisfied by unexplained absence of action and thought in a situation of known danger.' O'Hare v. Cocheco Mfg. Co. 71 N. H. 104, 107, 93 Am. St. Rep. 499, 51 Atl. 257. The jury were not warranted in finding that he performed the duty of care imposed upon him, for it does not appear that he used any care with reference to his position in the elevator, which he knew, if he had thought about it, was attended with the special danger which caused his injury." This plaintiff did not, as he says, "realize the danger," or, in other words, "did not think" of what he was doing when he should have been intent upon it, accepting his own statements at face, and assuming that he was not partially intoxicated, as to which fact the evidence at least preponderates against him, and that he was intoxicated. Thompson in his Commentaries on the Law of Negligence has a chapter devoted to "Injuries from Elevators in Buildings," and §§ 1086, 1087 are particularly applicable. "It is contributory negligence as matter of law to put one's head into an elevator well for the purpose of shouting for the car to come down, or of seeing whether or not it is coming or who is in it; . . . for a boy eight years old who has been warned and who knows better to put his head over the gate of an elevator." Citing Ramsdell v. Jordan, 168 Mass. 50, 47 N. E. 244, 3 Am. Neg. Rep. 47; Mau v. Morse, 3 Colo. App. 359, 33 Pac. 283; Murphy v. Webster, 151 Mass. 121, 23 N. E. 842; Guichard v. New, 9 App. Div. 485, 41 N. Y. Supp. 456; Peake v. Buell, 90 Wis. 508, 48 Am. St. Rep. 946, 63 N. W. 1053; Knapp v. Jones, 50 Neb. 490, 70 N. W. 19, 1 Am. Neg. Rep. 306. Section 1086, Thompson on Negligence, is now quoted from: "Where an errand boy twelve years of age, of more than ordinary intelligence, employed on the fourth floor of a factory build-

ing, on being sent down on an errand not relating to freight, leaned upon a chain hanging across the entrance to the shaft of the freight elevator to look for the elevator upon which he had no right to ride, and was injured by the giving away of the chain,"—recovery was barred by his contributory negligence. The same, "where one who had ridden upon an elevator put his head into the shaft through an opening in the upper part of the door and was killed by the elevator in its descent." Mau v. Morse, supra. Its facts are practically identical with the case at bar. Plaintiff contends that he should recover because the openings that were left in the doors rendered the elevator inherently dangerous. In Mau v. Morse, "the elevator did not have a screen above the window," so its entrance was less protected than in this case. Concerning this same contention the Colorado court says: "The negligence complained of is the failure to properly protect the entrance to the elevator which, when the elevator was not present, was also an entrance to the shaft." Deceased was killed while looking over the screen for the car, with his head in the elevator shaft. "It is true that if the opening had been so protected the deceased would probably have been unable to thrust his head into the shaft, but we are not sure that he could not have found some other means of equally unnecessary danger; and as to him with the knowledge of the situation which he possessed, or ought to have possessed, the failure of the defendants in that regard can hardly be said to be negligence. It is possible that while the opening was in the exposed condition described in the complaint, a case might have arisen in which the defendants would be held liable for a resulting injury, but such a case would differ widely in all its distinctive features from the one before us. If a man in his sound senses, with his eyes open, voluntarily and deliberately, even if carelessly, thrust himself into the jaws of death, we know of no theory upon which anyone can be held responsible for the consequences of his act but himself." Labatt on Master & Servant announces the same rule at § 1251. "The doctrine stated at the beginning of the last section has also been applied, as shown in the following paragraphs, to actions for injuries received under circumstances mentioned: . . . (2) taking a position in which there is danger from the movement of an elevator cage; and . . . (4) taking a position rendered dangerous by moving machinery; . . . (6) getting onto a stationery machine which may be

put in motion at any moment." The doctrine referred to in § 1250 is: "The general effect of the authorities upon this subject is that where the evidence shows that the injury complained of was due to the fact that at the time of the accident the servant was occupying a position. which was obviously more dangerous than another which was available, a prima facie presumption of contributory negligence arises which will warrant a court in declaring as a matter of law that the action cannot. be maintained." Hence, if plaintiff be considered as a servant discharging his duties as bell boy in giving orders to Peter, although he admits. and the court would have been warranted in finding that he was without authority to give orders which would come from the hotel clerk instead, yet assuming the contrary, the plaintiff's own testimony, showing that he unnecessarily placed himself in a position of great danger in the performance of said duty, convicts him of contributory negligence for not giving orders from outside the elevator and without protruding his. head into the elevator shaft.

In this connection it may be well to remark that there is a clear line of demarcation in the authorities between issues of negligence and contributory negligence considered as to those entering into or alighting from passenger elevators, and as to accidents occurring while the passenger is being carried therein, from cases like this at bar, where a person, whether a servant or would-be passenger, either understandingly or heedlessly thrusts head or limbs through an opening into an elevator shaft. A search has disclosed no case of the latter kind where contributory negligence was not imputed and precluded recovery as a matter of law.

And appellant's brief cites no authority to the contrary. However, he contends that, on account of plaintiff's minority, youth, and immaturity he should be measured in his conduct by what is usual to minors. of his age and mental capacity, and asserts that when such a standard is applied an issue of fact upon contributory negligence necessarily arises to be decided as a question of fact by a jury, instead of resolving into a proposition of law. It is true that, in considering cases where an infant is to be charged with contributory negligence, the age and mental capacity are to be considered with all other attending circumstances. Where, in the light of human experience, the infant is so young as not to be presumed to sense or foresee danger liable to follow his acts, negli-

gence will not be imputed because he is *non sui juris*.  And therefore there must be a zone between ignorance of and knowledge of impending danger, inability and ability to foresee and understand consequences. These considerations may be of fact for the jury to determine according to the state of the proof.  Where the infant is of such tender years as usually to possess no such knowledge, ignorance is presumed, and the question is one of fact for the jury.  And the same is true as to the other extreme, where the minor has so far reached maturity in understanding and comprehension as naturally to fully appreciate the danger that must follow his negligent act, the court must likewise act upon the proof of such ability, and direct the jury accordingly as a matter of law, instead of submitting to it an assumed issue of fact where there is none in the proof.  Any other rule would result in making the employee of an intelligent minor of plaintiff's age and mental ability, beyond all doubt fully appreciative of any usual risks voluntarily and understandingly undergone by him, the insurer in damages of injuries resulting from the minor's recklessness, at the caprice of a jury viewing the facts sympathetically and with knowledge that its decision establishes liability.  Concerning this the very recent work of Labatt on Master & Servant, § 1264, declares: "If he [the minor] has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposes himself to that danger. For the exercise of such measure of capacity and discretion as he possesses, he is responsible.  In a recent decision of one of the Federal courts of appeals it was laid down that, after passing the age of fourteen years, a child is presumed to be capable of avoiding danger by the exercise of due care.  And this is probably the rule in all jurisdictions."

An examination of the evidence discloses that plaintiff became fourteen years of age in July, preceding his injury on October 6, 1912; that he had worked as a bell boy in this hotel off and on for a year or more.  He was of at least medium size for his age, and was bright and intelligent, and an eighth grade pupil when at school.  He has given his testimony understandingly, and has evinced the knowledge of an adult at all times, of the situation concerning which he has testified. The elevator had been in operation one week, during which time he had learned to run it and understand its operation and mechanism, its horse power and velocity.  He knew that it was unfinished.  During

this time he had once had an accident with it, running it so far toward the roof as to cause it to automatically stall, as a result of which there is evidence tending to establish, although the fact is denied by him, that he was ordered to keep away from it and leave it entirely alone, except when he was taking up passengers or baggage, and at which time necessarily the elevator boy would operate the elevator. The rule of *res ipsa loquitur* applies and prevails. Shearm. & Redf. Neg. § 710a. Plaintiff knew, and must have known had he stopped to think of what he was doing, that by doing what he did he was placing himself in great danger. The only question in the lawsuit is whether he is excused as a matter of law from imputed contributory negligence in protruding his head within the elevator cage, simply because he "did not realize," *i. e.,* "did not think," of what he was doing, when, had he done so, he could not have avoided discovering his risk. Had he done so knowingly it would have been utter recklessness on his part. He had knowledge enough to foresee the danger and understand the risk. Under every authority he is not excused because of his minority solely, by reason of his failure to think when he should have done so. Possessing the knoweldge to appreciate the danger, understanding had he thought of the peril, his minority is not an excuse any more than it would have been had he been an adult. His employer had the right in law to assume that he would use that knowledge of understood and apparent peril to protect himself, instead of any assumption that he might take such hazards. The question here is not one of mental capacity, but of heedlessness. And the court was warranted in instructing a verdict upon the basis of his contributory negligence, notwithstanding his minority. Cronin v. Columbian Mfg. Co. 29 L.R.A.(N.S.) 111, and cases cited in the note thereto (75 N. H. 319, 74 Atl. 180) 29 Cyc. 541, "notwithstanding the immaturity of a minor, if it appears that he knew of the danger, he will be held guilty of contributory negligence," and cases cited sustaining the text; Binder v. Chicago City R. Co. 175 Ill. App. 503, where a recovery by a minor sixteen years of age at the time of the accident was set aside, and he was held guilty of contributory negligence as a matter of law in spite of his minority; Wilson v. Chicago City R. Co. 133 Ill. App. 433, where a child nine years old was held guilty of contributory negligence as a matter of law; Koehler v. Chicago City R. Co. 166 Ill. App. 571, where a boy ten years old was held

guilty of contributory negligence as a matter of law and a verdict set aside; Central of Georgia R. Co. v. Chambers, 183 Ala. 155, 62 So. 724; Jackson v. Butler, 249 Mo. 342, 155 S. W. 1071.

But appellant cites an excerpt from Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390, wherein 29 Cyc. 540, is cited to the effect that "in every case the question of the intelligence of the child and the measure of his capacity should be left to the determination of the jury." The portion quoted is but part of a lengthy discussion of contributory negligence as applied to infants, and immediately following this excerpt Upthegrove v. Jones & A. Coal Co. 118 Wis. 673, 191 N. W. 385, 14 Am. Neg. Rep. 670, is also quoted as follows: "The true test as to whether a minor has assumed the ordinary risks of his employment or is guilty of contributory negligence is not whether he in fact knew and comprehended the danger, but whether under the circumstances he ought to have known and comprehended such danger. . . . . Where it appears from the undisputed evidence that the defect or danger is open and obvious, and such as under the circumstances ought to have been known and comprehended by the plaintiff, then he will be held to have assumed the risk as a matter of law." *This is the doctrine applied in this case at bar.* We quote again from Umsted v. Colgate Farmers' Elevator Co.: "A servant, although under age, assumes all patent and obvious risks of his employment *if he has sufficient intelligence to understand and appreciate it* (26 Cyc. 1220E), except where the child is so young as to be incapable of exercising judgment and discretion. The rule of contributory negligence applies where the person is an infant the same as where he is an adult." 29 Cyc. 535. And on the second appeal after retrial in Umsted v. Colgate Farmers' Elevator Co., it was held, quoting from the syllabus of 22 N. D. 242, 133 N. W. 61, "that it conclusively appears that plaintiff was not only guilty of contributory negligence, but that he assumed the risks incident to such experimental tests. Hence, his recovery cannot be sustained." Though plaintiff was a minor, it was held that he was guilty of contributory negligence as a matter of law, although the jury had found the contrary by their verdict; and it may be noted that the opinion in both cases is by the same justice. See also Krisch v. Richter, — Tex. Civ. App. —, 130 S. W. 186, where a boy sixteen years old was held bound to know and appreciate open and obvious danger. The

same was held in Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56, in which the syllabus reads: "Plaintiff, a bright, intelligent boy ten and one-half years old, while leaning over a fence maintained as a barrier to a quarry, fell into the quarry because of the breaking of the fence. He had been warned repeatedly of the danger of playing near the quarry; had been driven away from it by a person living near; and had been whipped several times by his father for refusing to stay away. He admitted that he was entirely familiar with the danger of the place, and knew the defective condition of the fence and that the boards were rotten and the nails insufficient to hold the boards. Held, that he was negligent." A directed verdict of dismissal was sustained. In this case are cited the following cases, in all of which the plaintiff, although younger than this plaintiff, was held guilty of contributory negligence in every instance as a matter of law precluding recovery, *viz.*: Payne v. Chicago & A. R. Co. 136 Mo. 562, 38 S. W. 308, where the plaintiff was eleven years of age; Graney v. St. Louis, I. M. & S. R. Co. 157 Mo. 666, 50 L.R.A. 153, 57 S. W. 276, where plaintiff was eleven years and nine months of age; Walker v. Wabash R. Co. 193 Mo. 453, 92 S. W. 83, where the plaintiff was fourteen years of age; McGee v. Wabash R. Co. 214 Mo. 530, 114 S. W. 33, where plaintiff was a boy thirteen years of age; Mann v. Missouri, K. & T. R. Co. 123 Mo. App. 486, 100 S. W. 566, where plaintiff was a boy twelve years of age; Twist v. Winona & St. P. R. Co. 39 Minn. 164, 12 Am. St. Rep. 626, 39 N. W. 402, where the plaintiff was a boy ten and one-half years of age; Merryman v. Chicago, R. I. & P. R. Co. 85 Iowa, 634, 52 N. W. 645, where the plaintiff was a boy thirteen years of age; Carson v. Chicago, R. I. & P. R. Co. 96 Iowa, 583, 65 N. W. 831, where the plaintiff was a boy twelve years of age; Knox v. Hall Steam Power Co. 69 Hun, 231, 23 N. Y. Supp. 490, where the plaintiff was a boy twelve years of age; and Spillane v. Missouri P. R. Co. 135 Mo. 414, 58 Am. St. Rep. 580, 37 S. W. 198, where a boy nine years of age was held guilty of contributory negligence as a matter of law. This last case was distinguished in Herdt v. Koenig on the facts from Holmes v. Missouri P. R. Co. 190 Mo. 98, 88 S. W. 623, where it was held as to an eight-year old child under the proof of noncapacity, that contributory negligence was a question for the jury. But in Ridenhour v. Kansas City Cable R. Co. 102 Mo. 270, 13 S. W. 889, 14 S. W. 760, 4 Am.

Neg. Cas. 634, it is held "that it cannot be adjudged as a matter of law that a child of nine years of age is incapable of negligence." See 2 L.R.A.(N.S.) at page 759; 4 R. C. L. 559; 9 R. C. L. 1236, and 1258; Thompson, Commentaries on Law of Negligence, §§ 280–318, covering "injuries to children and others *non sui juris*" on negligence and contributory negligence, and particularly §§ 316–318.

This plaintiff acted recklessly and heedlessly, and should be bound by the consequences brought upon him by his own carelessness. He was guilty of contributory negligence as a matter of law. This holding decides the case adversely to appellant, and renders unnecessary an examination of any other assignments presented in his brief.

Appellant contends that the fact that the jury disagreed upon supposed questions of fact of negligence and contributory negligence submitted to it should be considered and taken as strong evidence that because of plaintiff's minority he was not guilty of contributory negligence. The answer is that in many of the cases cited verdicts were returned finding plaintiff not to be guilty of contributory negligence, but which were set aside and the contrary found as a matter of law. Plaintiff's argument carried to its logical conclusion would prevent any determination as a matter of law, that a plaintiff had been guilty of contributory negligence barring his recovery, where the court had erroneously submitted such questions to a jury, and it had happened to pass erroneously thereon, no matter how culpable and gross the plaintiff's negligence. In reading the record many matters are disclosed upon which a jury might disagree, and from conclusions upon a portion of the proof erroneously applied or omitted to be applied at all to the evidence surrounding contributory negligence, a disagreement might result on such supposed issue of fact. Plaintiff's intoxication or nonintoxication is an illustration. One can scarcely read the record without concluding that the preponderance of the evidence was to the effect that plaintiff was considerably intoxicated at the time of this accident, which alone would establish the reason why he did not think of what he was doing when he got his head in the path of the descending elevator. However, nonintoxication of plaintiff has been assumed as the fact, and upon that assumption the case is determined adversely to appellant. The judgment of dismissal is affirmed, with costs.

BRUCE, J. I dissent.