Strafford,
Nov. 9, 1901.

## O'HARE v. COCHECO MANUFACTURING CO.

The failure of a master to warn his servant of a danger incident to the employment and discoverable by the exercise of ordinary care does not constitute actionable negligence.

The mere fact that a servant is injured while in the performance of a particular act under the direct order of his superior does not sustain an action against the master, if the danger to which the servant was exposed was incident to the service, within the scope of his employment, and discoverable by the exercise of ordinary care.

In an action for negligence against an employer, certain evidence considered insufficient to warrant a submission of the question whether the injuries complained of resulted from the defendants' failure to give proper warning and instruction concerning dangers incident to the service, unknown to the plaintiff, and not discoverable by the exercise of ordinary care on his part.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the February term, 1901, of the supreme court by *Young*, J.

The plaintiff's evidence tended to prove the following facts: The plaintiff was about twenty-six years old, and was employed in the dry-room of the defendants' printery, running a drying machine. Cloth comes from the looms in pieces which average about fifty yards in length, but when it comes to the printery these pieces are sewed together so as to form a continuous band of cloth. The plaintiff's machine was used for " chemicing " and starching the cloth, which process is next to the last to which the cloth is subjected before it is finished. The cloth comes to the machine from the room above and runs under a wooden bar called the tension bar, then over a bar with a fluted brass surface, called the scrimp bar, then between two rolls called the nip of the mangle, which is similar to a wringing machine. The lower roll is covered with rubber, runs in the starch or the chemical as one or the other is in use, and saturates the cloth ; and the two rolls squeeze out all the moisture possible. From the mangle the cloth runs under a small wooden roll situate one inch from a heavy metal cylinder called the expander. The surface of the expander is made in sections, and these move from a point near the small roll, diverging in both directions from the center in a line parallel with its axis for about two thirds of a revolution, and in the other third falling back into place. This motion has a tendency to make the cloth wider. The expander is not operated by any independent power,

but only by the traction of the cloth passing over it. After the cloth leaves the expander it goes over the dryers, which are metal cylinders twenty-four inches in diameter, filled with steam under pressure. They are called cans, and are so arranged that the top of the first one is practically on a line with the axis of the expander, and its surface within an inch of the expander, so that, a person's hand caught on the expander would be drawn down between it and the can, and crushed and burned.

The plaintiff's work required him to stand in front of his machine, facing the cloth as it came down at normal width from the room above. There was nothing to prevent him from seeing holes in the cloth, if there were any, except the speed at which the cloth moved through the machine, which averaged about one piece of cloth of fifty yards per minute. His duty was to take out double edges and scrimps, steer the piece, and change the liquid in which the rubber roll ran. He also started and stopped the machine. Double edges are folds in the edges of the cloth, and usually show as the cloth comes down from the room above. These are taken out on the tension bar. Sometimes they form between the scrimp bar and the nip of the mangle, and sometimes between the nip and the expander.

At the time of the accident the plaintiff had been at work for the defendants about eighteen months, part of the time as a spare hand in the room in which he was hurt and the one above it, and for about six months on the machine where he was injured. No special instructions were given him as to the proper place to take out double edges, and he was accustomed to take them out both on the tension bar and on the expander, where the foreman had seen him doing this work. Shortly before the accident the foreman called to the plaintiff from the room above to go around behind and take out the double edges; and the plaintiff, in trying to take one out on the expander, was injured, his hand being caught, as he testified, in a hole in the cloth in the middle of a piece, and drawn in between the expander and the hot cylinder next it.

The plaintiff knew that if his hand from any cause was caught in the cloth passing over the expander he was liable to be injured; but he testified that he had never been told that there might be holes in the cloth, and that he had no knowledge of any except at the seams where the pieces from the looms were sewed together. The defendants knew there were liable to be holes, varying from the size of a marble to the size of a man's head, in the cloth put through the plaintiff's machine; and their superintendent testified that about two pieces in every hundred had holes in them.

The defendants' motions for a nonsuit and to direct a verdict in their favor were denied, and they excepted.

*Alfred S. Hayes* (of Massachusetts), for the plaintiff.

*John Kivel* and *George T. Hughes*, for the defendants.

PARSONS, J.   It is not contended that there was any defect in the machine upon which the plaintiff was injured, or that the obligation of the master to provide reasonably safe machinery was not fully performed.   Neither is it claimed that the holes in the cloth, charged as the cause of the plaintiff's injury, were due to any carelessness or unskillfulness of the master in the process of manufacture adopted.   So far as appears, such defects are liable to arise in the prevailing methods of making cloth.   At least, there is no attempt to prove the contrary.   The only ground of negligence alleged against the defendants is that the plaintiff was not informed of the possible or probable occasional existence of holes in the cloth.

"There are limits to the obligation of an employer to point out the dangers of proper machinery.   The obligation is imposed mainly for the sake of the young who have not the experience or power to look out for themselves which are to be expected in adults, or, in the case of adults, where there are concealed defects." *Robinska* v. *Lyman Mills*, 174 Mass. 432, 433 ; *Collins* v. *Car Co.*, 68 N. H. 196, 197.   The master is under no obligation to give warning of dangers incident to the service of which the servant knows or ought to know.   The servant assumes the risk of injury from dangers incident to the service which are obvious, or of which he knows, or which ordinary care would disclose to him. *Henderson* v. *Williams*, 66 N. H. 405, 413.   It is the duty of the servant "to use ordinary care to avoid injuries to himself.   He is under as great obligation to provide for his own safety from such dangers as are known to him, or discoverable by the exercise of ordinary care on his part, as the master is to provide it for him. . . . 'It is the duty of the employee to go about his work with his eyes open.   He cannot wait to be told, but must act affirmatively.   He must take ordinary care to learn the dangers that are likely to beset him in the service.   He must not go blindly to his work when there is danger.   He must inform himself.   This is the law everywhere.'" *Wormell* v. *Railroad*, 79 Me. 397, 405, 406.

From the plaintiff's testimony it appears that the taking out of the double edges upon the expander — the operation in which the plaintiff was engaged when injured — was necessary and proper. This being so, the risk of injury in the operation was incident to the plaintiff's employment.   That there was danger that a person's hand placed upon the expander for any purpose might be carried

along upon the cloth, or caught in a double edge, hole, or tear in the band of cloth at the seams or elsewhere, and drawn in between the expander and hot roll, producing serious injury, must be obvious to any person of ordinary understanding. But the case does not stand upon this ground, for the plaintiff admits that he fully understood the danger. He knew that if his finger was caught in the cloth he might be injured precisely as he was injured. He testified he knew that if his finger was caught in a double edge such as he was trying to straighten, he would be injured. With such knowledge, due care required him to endeavor to learn whether any imperfections were likely to occur in the cloth by which his hand would be caught, and the method of avoiding such danger. He testified that he did not know there were holes in the cloth except at the seams where the pieces coming from the looms were sewed into a continuous band for passage through his machine. It is not necessary to consider the question whether it can reasonably be found, in the face of all the other evidence in the case, that this statement is true; for a determining question is whether upon the evidence, considering only that furnished by the plaintiff, it can with reason be said that the plaintiff would not with ordinary care have learned prior to the accident of the possible existence of such imperfections in the cloth coming to his machine.

There is no evidence that he made any effort in this direction. If the obligation to exercise care could have been satisfied by inquiry of workmen of experience (*Burnham* v. *Railroad*, 69 N. H. 280), or by looking without seeing or discovering holes, it is not claimed that he took either precaution. The obligation to exercise care is not satisfied by unexplained absence of action and thought in a situation of known danger. *Gahagan* v. *Railroad*, 70 N. H. 441. The plaintiff had abundant opportunity to learn whether there was anything about the cloth liable to catch his hand upon the expander. He started and stopped his machine, had been engaged upon this work for six months, and for a year previous had been employed in the same mill in and out of the room where his machine and others like it were in operation. He was of mature age, and there is no suggestion that his eyesight or his intelligence was defective. He had opportunity to examine the cloth when not in motion. The case finds that there was nothing to prevent his seeing the holes in the cloth except the speed at which it moved as it passed from the ceiling down directly before his eyes as he stood in front of the machine, which was the usual place for his work. He had to guide it into the machine, take out scrimps as well as double edges, and necessarily had to handle the cloth more or less as it passed along. It usually

ran when in motion at a speed of about fifty yards per minute, or two and one half feet per second, or one and three fourths miles per hour. Nothing prevented his examining the cloth, as it came down from above to his machine, as closely as he desired. While doing his work at the tension bar, the distance of his eyes from the cloth could not exceed the length of his arms. The proposition is, whether a man who was looking and attentive could see holes " varying from the size of a marble to the size of a man's head " in a band of cloth, as the cloth passed before his eyes at arm's length, at a speed of about one half the rate of an ordinary walk; or what is the same thing, could a man walk at half speed by the side of a band of cloth at the level of his eyes and at arm's length from him, and, when looking at it for the purpose, fail to see holes of the size described? Admitting the possibility of a differ-ence among reasonable men upon the question whether the plain-tiff in fact knew of the possible existence of holes in the cloth between the seams, it is clear that reasonable men cannot differ in the conclusion that the plaintiff could have seen the holes if he had exercised care to ascertain whether any imperfections might exist in the cloth to cause the danger of which he knew and by which he was injured.

As the plaintiff is chargeable with knowledge which he could have acquired with ordinary care, and as such care would have dis-closed to him the danger of which he complains he was not warned, the failure to warn him of a danger of which he knew or ought to have known is not a ground of action against his employer. *Crowley* v. *Pacific Mills*, 148 Mass. 228, 230 ; *Rooney* v. *Company*, 161 Mass. 153, 160 ; *Stuart* v. *Railway*, 163 Mass. 391, 393 ; *Kenney* v. *Company*, 168 Mass. 278, 282. Furthermore, it was suggested by counsel for the plaintiff, in oral argument, that by holding the hand, when attempting to straighten the double edge, with the fingers pointing in the direction the cloth was passing, the danger of being caught by a hole in the cloth would be avoided. If this be so, the precaution suggested was as necessary to prevent injury from a hole in the band of cloth at the seams as from one elsewhere. Knowing that holes were liable to occur in the band of cloth, which could be guarded against in a certain way, there is nothing in the testimony tending to show that a knowledge of the precise possible location of the hole was essential to his safety. A failure to warn him of a fact which his knowledge rendered immaterial on the question of his safety will not support the servant's action against his employer. *Henderson* v. *Williams*, 66 N. H. 405.

The plaintiff claims that on the occasion when he was injured he was expressly directed to go around behind and take out the

double edges, and that when so directed it had been his habit to go behind and take out the edges on the expander. This testimony, if found true, would tend to answer the claim that the plaintiff was guilty of negligence in attempting this work upon the expander. If the plaintiff had never before done the work at this point in the machine or seen it done, and had suddenly been directed to do it in this manner, the immediate command of his superior would be evidence upon the question whether he ought to have appreciated and understood the danger, and might be considered an excuse for his failure to do so. But the plaintiff puts his case on the ground that it was necessary and proper to do the work at this place. He had done it himself, had been seen by his superiors doing it, and had seen the foreman in charge of his work do it. From this it follows that the plaintiff was not suddenly directed to do a work with the dangers of which he had no opportunity to familiarize himself, but was merely called upon to perform a labor incident to his service and within the scope of his employment. He was merely directed to perform an act undoubtedly dangerous, but with the dangers of which, upon his own representation of the duties he had undertaken to perform, he could have informed himself by the exercise of ordinary care. Under these circumstances, the fact that he was injured while acting under the direct orders of his superior does not give him a right of action. *Davis* v. *Railroad,* 20 Mich. 105,— 4 Am. Rep. 364, 376; *Wilson* v. *Mills,* 159 Mass. 154; *Russell* v. *Tillotson,* 140 Mass. 201.

A careful examination of the minutes of the testimony which have been furnished fails to disclose any evidence upon which the verdict found for the plaintiff can be sustained. The motions for a nonsuit and verdict for the defendants should have been granted.

*Exceptions sustained: verdict set aside: judgment for the defendants.*

All concurred.