Merrimack,
June 6, 1922. }

### VINCENT OLGIATI *v.* NEW ENGLAND BOX COMPANY.

A physician, properly qualified as an expert, may testify that a person is of re-
tarded mental development.

A witness experienced in superintending the operation of circular saws may
properly testify to the natural movement of the hand of an operator under
given circumstances.

Certain evidence warranted the finding by the court that remarks of counsel
did not render the trial unfair.

On certain evidence the questions were properly submitted to the jury, whether
the sudden displacement of the guard of a circular saw was a concealed de-
fect which a servant did not appreciate, and whether by reason of his mental
deficiency and lack of instruction he was at fault for not discovering this
defect and the probable risk of accident.

CASE, for negligent injury to an employee. Trial by jury, and verdict for the plaintiff. Defendant excepted to the denial of its motions for nonsuit and directed verdict, to the admission of evidence and to statements of counsel. The facts appear in the opinion. Transferred from the April term, 1921, of the superior court by *Marble, J.*

*John M. Stark* and *Robert W. Upton* (*Mr. Stark* orally), for the plaintiff.

*Lucier & Lucier* and *Nathaniel E. Martin* (*Mr. Alvin J. Lucier* orally), for the defendant.

SNOW, J. The plaintiff was operating a circular saw, reducing two-inch boards sixteen inches long and of varying breadths to blocks of the uniform width of thirteen inches. The width was regulated by a gauge or guide clamped to the saw-bench to the right of the saw. The saw was protected by a blade or spreader,

rising from the bench back of the saw, and by an aluminum hood suspended above the saw from the spreader. Two or more boards making up the necessary width being placed upon the bench, the operation required the sawyer to hold them firmly together and against the guide by pressure forward and to his right, and in this position to advance them against and past the saw.

The plaintiff's evidence tended to show that at the time of his injury, the plaintiff, with his hands upon the ends of the boards nearest to him, advanced them against the saw about two inches when the saw pinched; that he pulled the boards back and again advanced them against the saw until the forward ends of the boards had reached or passed the back of the saw; that at this point, the back of the saw, by reason of some obstruction, caught and lifted the forward ends of the board, through which the saw was running, against the guard, throwing it upward and backward, where it remained; that the saw-scarf becoming cleared of the obstruction before the board was lifted completely off the saw, the board fell back in place upon the bench with the saw still running through it, thus leaving the saw exposed; that the movements of the board were rapid and forceful; that the plaintiff's left hand with which he was holding the board against the guide by pressure to the right was by a natural and involuntary motion suddenly brought in contact with the top of the saw, severing three fingers; that in sawing light and short boards, the boards are likely to jump up by reason of some obstruction catching between the board and saw.

The acts of negligence relied upon were: (1) failure to properly guard the saw; (2) permitting a person of plaintiff's mentality to work on the saw; and (3) failure to warn the plaintiff of the danger.

There was evidence that for work similar to that in which the plaintiff was engaged, guards commonly in use consisted of a knife or a spreader with a hood held rigidly in place with its protecting flanges only one-fourth to three-fourths of an inch above the work, thus covering the upper part of the saw; that with such a guard, the plaintiff's fingers could not have come in contact with the saw in the manner that they did. For convenience in changing saws, the guard in use at the time of plaintiff's injury was so constructed that it could be tipped back from its position over the saw. It had become so worn that the hood would move laterally and could not with safety be put down over the saw. It was, therefore, so adjusted that the bottom of the hood was above the plane of the highest point of the saw, which was four inches or more above the bench.

To avoid the lateral play, the hood was held in place by a wooden wedge inserted between the spreader and one of the flanges of the guard. This wedge afforded no resistance to the upward motion of a board suddenly lifted by the saw against the under side of the hood and propelled with a momentum gained from a start of two or more inches. The circumference of the saw was moving at a speed in excess of ten thousand feet per minute.

The defendant contends that the evidence does not disclose what caused the plaintiff's hand to come in contact with the saw and was insufficient to warrant a finding that plaintiff's hand would not have hit the saw even if there had been a guard, since his hand might have slid under any guard, stationary or movable. This contention disregards the evidence. The plaintiff testified that the board kicked up and threw the guard back and threw his hand on top of the saw. The only other eye-witness, who stood four feet away, in his testimony upon cross-examination variously stated the occurrence as follows: The wood jumped up and came down and threw plaintiff's hand on the saw; his hand went on the saw when the board went down; when the board went up he was pushing towards the gauge and his hand slid over on the saw; when the board jumped his hand came off and fell on the saw; it caught him pretty well on the top of the saw; the board came down fast and his hand went on the saw. The manner of the movements of the board and guard which were produced in evidence was demonstrated at the trial by the witnesses. It could be found on this evidence that while the plaintiff was pressing the boards forward and to the right against the gauge, his hand was lifted up by the board and, moving in the direction in which pressure was being exerted, fell upon the top of the saw which projected not more than two or three inches through the board when it had fallen back to its place on the bench; that this would not have happened had the guard with its protecting flanges remained in its position above the saw.

This was the second trial of the case. At the first trial, six months before, the plaintiff had testified that the board had "kicked back" instead of kicking up, and had made other contradictory statements which he explained as due to confusion at the first trial. A medical expert called by plaintiff to show his retarded mental development admitted on cross-examination that plaintiff's statements, especially where his self-interest was concerned, would, in his opinion, be unreliable and that plaintiff would be as likely to lie as to tell the truth. The defendant claims that for these reasons, reliance should

not be put upon the plaintiff's statements in the issues here presented. While such contradictions and opinion evidence were material and convincing as bearing on the plaintiff's credibility, it cannot be said as a matter of law that they are conclusive of the entire want of probative value in his testimony.

It is argued that plaintiff's injury was due to a danger incident to his employment and that, therefore, he assumed the risk of it. As the defendant had accepted the provisions of *c*. 163, Laws 1911, known as the employers' liability and workmen's compensation act, *s*. 2 of that act does not apply. The action being at common law, the plaintiff, in order to recover, had the burden of showing that the injury arose from a risk which he did not assume. *Bjork* v. *Company*, 79 N. H. 402, 404.

But the plaintiff assumed only such risks of his employment as he knew of and appreciated, or which would have been disclosed to him by the exercise of due care. *Cassidy* v. *Corporation*, 79 N. H. 427, 429, and cases cited. The plaintiff was twenty-five years old, and had had no experience with a circular saw except as he had worked at this saw and at a fitting saw for seven months. He had previously done some other work about machinery but of a different nature and which did not especially qualify him for the work he was doing. The testimony of medical experts to the effect that he was of retarded mental development was corroborated by his conflicting and confusing statements of the facts in evidence. The plaintiff testified that the only instruction given him was by way of a demonstration by the foreman, who sawed two boards and told him if a board pinched to pull it back. The foreman, who was a witness for the defendant, admitted that he gave the plaintiff no instructions except to advise him to watch the other men and to take his time. The foreman further testified that it was the operator's duty to adjust the guard and that it could have been adjusted so as to be safe. It is not contended that the plaintiff was advised of this duty or instructed in respect to its performance. Nor was he warned of any dangers. The plaintiff testified that he understood the guard was there to keep him from putting boards or his hands on top of the saw; that he never saw the guard removed and that he never knew a board to kick up like that before; and that he did not know that there was any danger of being cut when he pushed these boards through the saw. The danger of putting one's hands on an unguarded saw is obvious, but the danger arising, as n the instant case, from the sudden and unexpected displacement

of the guard by reason of its defective construction and installation was a concealed danger. There was evidence to support findings that the plaintiff did not know or appreciate this danger and, having in mind his mental incapacity and lack of instructions, that he was not at fault for not discovering the defects and the probable risk of accident.

Two practicing physicians, graduates of medical schools, each of whom had made some special study of mental conditions and diseases, and both of whom had examined the plaintiff at the time of the trial fourteen months after the accident, were permitted to testify, subject to defendant's exceptions, that plaintiff was a person of retarded mental development. The test to determine whether a witness is qualified as an expert is to inquire whether his knowledge of the matter in relation to which his opinion is asked is such that it will probably aid the trier of the question to determine the truth. *State* v. *Killeen*, 79 N. H. 201. The qualifications of the witnesses appear to have met the required test. Whether the evidence was too remote was a question of fact for the trial court. The fact that there were natal characteristics indicating the permanency of plaintiff's mental condition supports the finding of the competency of this evidence.

A witness who for thirty years had had charge of work in shops where circular saws were in use, and was experienced in the operation of saws under similar circumstances, was permitted, subject to defendant's exception, to testify to the natural movement of the operator's left hand when pushing a board against the saw and gauge under the circumstances and in the manner that the plaintiff was doing when the board jumped. It cannot be said as a matter of law that the witness' knowledge was not superior to that of the jurors so as to be of aid to them. *Paquette* v. *Company*, 79 N. H. 288, 290.

During the course of the examination of a witness as to the identity of marks in the saw-scarf through the board in question, counsel for plaintiff remarked to opposing counsel, who was conducting the examination, that the latter was "sticking your [his] pencil in there" on the preceding day of the trial. Defendant excepted to the remark, to the further suggestion of counsel that he intended his remark as a question, and to his assertion that the circumstance occurred in the presence of the jury and that they saw what took place. It is manifest that the remarks were not only a breach of the proper decorum of the trial but objectionable as carrying the

assertion of a material fact. While the remarks called for censure, it does not appear that their effect was incurable. Upon the evidence before the trial court, including the circumstances under which the assertions were made, the apparent effect upon the jury, the subsequent proof by a witness of the fact asserted, the withdrawal of the remarks by offending counsel, and instructions to the jury to rely upon their own recollection and not upon counsel's statements, the court has found as a fact that the trial was not rendered unfair by the remarks. It cannot be said as a matter of law that the evidence did not warrant the finding. *Tuttle* v. *Dodge*, *ante*, 304.

*Exceptions overruled.*

All concurred.