Hillsborough,
March 4, 1924.

### FRANK ZAJAC v. AMOSKEAG MANUFACTURING COMPANY.

It is a master's duty to provide a safety device only where it is reasonably required to meet a foreseeable danger.

Where the danger to a servant of getting his hand caught between a roll and a belt was obvious to a man of his intelligence and experience, his failure to know of and appreciate the danger is due to his failure to exercise ordinary care.

In an action at common law for injuries received by a servant through the negligence of the master, the burden of proof of the non-assumption of the risk is upon the plaintiff.

A finding of an essential fact cannot be based on conjecture or upon an expert's opinion which amounts to no more than a conjecture.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred by Branch, J., on defendant's exception to the denial of its motions for a nonsuit and for a directed verdict.

The plaintiff was injured upon a Kitson opener and breaker, a machine designed to break up the cotton in the first step in preparation for spinning. It includes a hopper, open at the top, into which the cotton is placed from the bale. The bottom and back interior surfaces of the hopper each consist of latticed aprons forty inches wide. Each apron forms an endless belt driven by cylinders five inches in diameter over which it passes at each end. One apron is lateral and forms the floor of the hopper. The other apron stands at an angle of about fifteen degrees from perpendicular, leaning away from the lateral apron, and forms the back interior surface of the hopper. This upright apron is made up of wooden slats about one inch wide riveted to three or four leather belts. Pins projecting into the hopper on every other slat tear and carry upward over the

top of this apron the cotton which is brought to it by the motion of the lateral apron. Except as the hopper is open at the top all moving parts are enclosed in a metal case made solid to the hopper. The upright apron which is six feet in height is supported by three intermediate carrier rolls. Each carrier roll is supported at either end by a shaft or gudgeon five-eighths of an inch in diameter and two and one-half inches long. These gudgeons rest in hook-shaped slots or bearings which are a part of the metal case. These slots, cut parallel to the course of the apron, are one and one-eighth inch deep and seven-eighths of an inch wide at the opening. The rolls are held in place by gravity. The metal case has oval openings through its sides at either end of the three carrier rolls. These openings are about four by nine inches and are cut at the angle of the course of the apron. The hook-shaped bearings project into these openings at a point three inches from the top. Each of these openings is of sufficient size so that a man's arm may be inserted beneath the roll and the roll lifted from its bearing and removed. The carrier rolls are three inches in diameter and forty inches long and are operated solely by the friction of the apron and supporting belts. When the machine is in operation the apron moves upward at the uniform speed of twenty-five feet per minute. A carrier roll occasionally, but not often, stops. This is sometimes due to a gummed bearing and sometimes to a lack of friction of the apron belts when the cotton bears lightly against it. When stopped from the former cause, a roll produces wear upon the apron.

The plaintiff is a Polander and does not read, write or speak English. He had worked for the defendant company for twenty years and had operated the Kitson openers for five or six years. When set to work on these machines he was given no instructions. His duty was to put cotton in the hopper, to feed it and keep it going, to sweep and to clean. He had seen the second-hand start a roll with his hand by reaching through the opening under the bearing, and had been told by him to move a roll when it stopped. The plaintiff had been accustomed to start an idle roll at different times with his hand or with a stick if he had it handy. At the time of the accident he had no stick and used his right hand to start the middle or second roll, which was less than four feet above the floor upon which he was standing. His hand was caught between the belt of the apron and the carrier roll. The fingers and knuckles were scraped and the wrist or arm more severely injured. Other facts appear in the opinion.

*Robert W. Upton* and *Joseph E. Lachance* (*Mr. Upton* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

SNOW, J. The plaintiff, the only witness to the accident, testified in substance that, observing the middle roll was stopped, he reached through the opening beneath the bearing to start it; that when he touched the bottom of the roll it moved fast and caught his hand; that he "yanked it and pulled it out," that the nails on the inside of the belt scraped the back of his fingers and knuckles and that the roll turned the arm and broke it. The only other evidence bearing on the manner in which the plaintiff's hand was caught is the testimony of the plaintiff's mechanical expert, who stated that the plaintiff must have touched the moving apron which drew the hand into the nip between the roll and the apron.

The plaintiff's claim is that the defendant was negligent (1) in furnishing a defective machine, (2) in failing to give proper warning of the defect.

The defect relied upon was a depression about one-fourth inch deep in the lower side of the inclined slot or bearing which had been created by eighteen years' wear of the revolving gudgeon. The evidence tended to show that the shoulder of the depression had a tendency to check to some extent the otherwise free upward movement of the roll if pressure should be applied from beneath. The plaintiff's contention is that, as his hand when caught between the roll and belt reached across beneath the roll, and as his shoulder was higher than the roll, the roll would necessarily have been lifted from its socket by the upward motion of the arm and the belt, and that, therefore, but for the defect, the forearm would not have been broken. To state plaintiff's position in another way — it is not claimed that the defective bearing caused the hand to be caught: the claim is that, but for the defect, the hand having been caught, the plaintiff's injury would have been limited to the fingers and knuckles. In other words, the plaintiff's theory is not that the accident would not have happened but for the defect, but that, except therefor, the progress of the accident would have been interrupted before the infliction of the injury to the forearm.

This position gives rise to two questions, namely, (1) whether or not on the evidence it could be found that the injury to the forearm was caused by the defect, (2) if it could be so found, whether

or not it could be found that the failure of the defendant to repair the defect was a breach of a duty owed the plaintiff, or in other words was negligent. To support his contention on the first of these issues the plaintiff relies upon his mechanical expert, who testified in substance that any obstruction passing into the nip of the belt and roll would tend to lift the roll free from its bearing, and that therefore with a machine in normal condition he would not expect a serious injury to a man's hand caught between the belt and the roll. In so far as this expert opinion is offered to prove that, except for the worn bearing, the upward force supplied by the belt against the side of the roll, plus an obstruction the thickness of a man's hand, would have lifted the roll out of its bearing rather than cause it to continue to rotate, it is mere conjecture. Any finding based upon such an opinion could be no more. As the plaintiff testified that he did not try to lift the roll, any upward pressure applied by him must therefore have been involuntary. It is likewise mere conjecture. (1) that there was an involuntary upward motion of the plaintiff's arm, (2) that such motion, if made, would have prevented the injury to the forearm but for the resistance of the defective bearing. Essential facts cannot be based on conjecture.

If, however, it could be found that the injury to the forearm was caused by the worn bearing, the second question would then be presented, namely, whether or not this defect was a breach of defendant's duty to the plaintiff. The test to determine this question is to inquire whether or not there is evidence from which it could be found that the defendant (1) should have reasonably anticipated that the plaintiff, in peril from having been caught between the belt and the roll, would have escaped severer injuries but for this defect, (2) and therefore should reasonably have provided against such a contingency. Plaintiff's contention is in effect that the defendant's duty required it to maintain the bearing in new condition as a safety device to protect operatives whose fingers might be caught between the belt and the roll. It is a master's duty to provide a safety device only where it is reasonably required to meet a foreseeable danger. There is no evidence from which it could be found that such an accident was reasonably to be anticipated by any one, or that the open bearing was designed as a safety device or was so regarded by the plaintiff. There is no evidence that the plaintiff was in any way misled, or that he relied upon the roll's lifting out. He testified that he never knew one of the rolls to come out of its socket. It does not appear that he knew that the roll

could be removed, or that the bearing was not a solid bearing. We discover no evidence which would support a finding that the defendant should have reasonably anticipated and provided against the contingency which plaintiff's accident presented.

It follows from the foregoing that, if the plaintiff can recover, it is because the danger of getting his hand caught between the roll and belt, without reference to the alleged defect in the bearing, was not an assumed risk of his employment. The defendant had accepted the provisions of Laws 1911, c. 163. This action is, therefore, at common law. To recover, the plaintiff must establish not only that the defendant's negligence caused the injury but that the injury arose from a risk which the plaintiff did not assume. The burden of proof of the non-assumption of the risk is on the plaintiff. *Bjork* v. *Company*, 79 N. H. 402, 404, 405; *Smith* v. *Company*, 80 N. H. 299, 300; *Olgiati* v. *Company*, 80 N. H. 399, 402; *Knighton* v. *Company*, 80 N. H. 546. Notwithstanding his ignorance of the English language, the plaintiff's testimony shows that he had a good understanding of the operation of the machine. He knew that the apron moved at a uniform rate of speed; that the roll was propelled by friction with the inside of the belt which formed a part of the apron; that the slats were fastened to the belt by metal pins or rivets which showed inside the belt next the roll at the point where he touched the roll. He testified that these nails were what scraped the back of his hand. When he inserted his hand he knew the apron was moving and lay against the roll. He had sometimes taken the precaution to use a stick to start the roll. He had operated the machine for five or six years. This evidence is capable of but one inference, namely, that the danger of getting his hand caught was obvious to a man of plaintiff's experience and intelligence. The plaintiff has, therefore, failed to maintain the burden of proof that his injury was due to a risk which he did not assume.

Reliance is placed upon the plaintiff's testimony that he did not know when he touched the roll that he was in danger of getting hurt. But proof of his unconsciousness of danger does not establish his non-assumption of the risk. "The test to determine that question is to inquire whether he knew of the physical condition of the defendants' instrumentalities of which he complains and appreciated the risk of the particular danger incident thereto which caused his injury . . . and not whether he was conscious of his danger. . . . In other words, notwithstanding the evidence on which the plaintiff relies is relevant to the issue of his care, it is not sufficient, in and

of itself, to prove that the defendants were in fault; for the only duty they owed him in so far as instrumentalities were concerned was that of notifying him of those dangers of the service of which they did and he did not know." *Fontaine* v. *Company*, 76 N. H. 163, 164; *Paige* v. *Company*, 80 N. H. 439, 440. The plaintiff assumed the risk of all the dangers of the employment, of which he either knew, or would have known if he had used ordinary care for his own safety. *Bergeron* v. *Company*, 80 N. H. 231, 232; *Cassidy* v. *Corporation*, 79 N. H. 427, 429. The danger of getting his hand caught between the roll and belt being obvious to a man of plaintiff's intelligence and experience, if he did not know of and appreciate it, the fact was due to his want of ordinary care. *Hicks* v. *Company*, 74 N. H. 154; *O'Hare* v. *Company*, 71 N. H. 104.

The plaintiff has failed to sustain the burden which was on him of proving either that he did not know or that he was not in fault for not knowing of the dangers of placing his hand on the roll when the apron was moving. *Smith* v. *Company*, 80 N. H. 299, 300.

*Exceptions sustained: verdict and judgment for defendant.*

PEASLEE, J., did not sit: the others concurred.