Hillsborough, ⎱
Nov. 5, 1924. ⎰

Margaret Riordan v. Nashua Manufacturing Company.

A servant assumes only those risks of his employment which he knows and appreciates, or which would be disclosed to him by the exercise of due care.

He is not chargeable with contributory negligence for failing to take precaution against dangers which are unknown to him, and which due care would not have disclosed.

Case, by an employee to recover for personal injuries received in the course of her employment. Trial by jury and verdict for the plaintiff. Transferred by *Marble*, J., on the defendant's exceptions to the denial of its motions for a nonsuit and for a directed verdict.

The plaintiff was thirty-six years of age and had been in the employ of the defendant ten weeks, during nine of which she had worked as a spare hand in the carding room where the accident occurred. During the latter period she had operated "drawing frames" and "railway heads," machines of similar character, through which cotton in the form of an untwisted roll called "roving" was successively passed in the process of preparing it for spinning. In the operation of the "railway head" the operative enters the cotton between steel rolls from the back side of the machine. As the cotton comes out at the front it passes into a can three feet tall and one foot in diameter standing upon a revolving table slightly above the level of the floor. When the can is full it is the duty of the operative to go to the front of the machine, break the cotton roving, move the can across a narrow aisle to the drawing frame, and replace the full can with an empty one. This process is repeated as fast as the cans fill. It frequently happens that the roving piles up higher than the top of the can and falls off, in which event it is the operative's duty to pick it up and place it on the top of the can. Sometimes a can tips over, in which case it becomes her duty to pick it up and to replace the fallen cotton, if any, on the can. This had occurred several times during the plaintiff's employment.

Each machine consisted of a long iron frame supporting a line of four series of short steel rolls, each series operated by a separate belt driven by a pulley upon a long smooth steel shaft suspended midway between the legs of the frame below. The pulleys were open wheels, the outside rims of which projected either way from central curved arms or spokes which connected the rims with hubs upon the shaft. The pulleys revolved downward and away from the operative, their

lower surfaces being but a short distance above the floor. The operative could start or stop a given set of rolls by means of levers on either side of the machine, but had no control over the lower shaft and pulleys which continued to revolve unless the second hand shut off the power from the line of machines. This he could do by means of a switch at a point some forty to fifty feet away. The shaft and pulleys were unguarded.

On the day of the accident plaintiff, who was operating a "railway head," was instructed by the second hand to leave her work and to go over and straighten out another alleyway, about three and one-half feet wide, running between other lines of like machines. She was directed to return to her work when this task had been accomplished. She found this alleyway "all cluttered up with cans," one of which had tipped over, and quite a little roving had fallen out upon the floor. The can lay directly across the alleyway with the open end toward the line of railway head machines. She bent over to put the roving into the can. Facing the line of railway machines, she placed her left hand upon the side of the can and reached with her right hand to lift the cotton from the floor. As she picked up the roving the little finger of the right hand was drawn into the revolving shaft, or pulley. The flesh was torn away, leaving the bone bare so that amputation was necessary. After the accident quite a bunch of cotton was found wound around the shaft near the pulley. Other facts appear in the opinion.

*William H. Barry* and *Frederick J. Gaffney* (*Mr. Gaffney* orally), for the plaintiff.

*Lucier & Lucier* (*Mr. Alvin J. Lucier* orally), for the defendant.

SNOW, J. The defendant having accepted the provisions of Laws 1911, *c.* 163, this action is at common law as modified by Laws 1915, *c.* 148.

The negligence relied upon was the failure of the defendant to furnish the plaintiff with a safe place to work, and to instruct her as to the danger from the unguarded shaft and pulleys. The plaintiff admitted she had been instructed as to the operation of the steel rolls, but denied that her attention had ever been called to danger from the moving shaft and pulley in the frame below. The second hand under whose direction the plaintiff was working testified that the smooth steel rolls in the machines sometimes got "bunged up"

with cotton so that the machines had to be stopped in order to remove it; also that he had seen cotton going around a shaft in a similar drawing frame, though never in the room where the accident happened; that he had instructed every girl that went on to the work to "stop their frames to clean, and not to have them in motion when they cleaned up"; but that he had never, before the accident, called their attention to any danger from the lower part of the machine. He admitted that a guard could have been installed to protect the operative from the moving shafts and pulleys without interfering with the operation of the machine.

The defendant was chargeable with knowledge of the condition of the alleyway which the plaintiff was directed to straighten out, its narrowness, the clutter, the overturned can and the possible proximity of the cotton to the unguarded shafting and pulley. It cannot be said that reasonable men might not find upon the foregoing facts that the defendant should have maintained a guard to protect the operative in her work; or should have shut off the power before sending the plaintiff to clean up the cluttered aisle in proximity to the unguarded shafting and pulley; or, failing both, should have instructed the plaintiff as to the danger.

The defendant contends that the accident could not have happened in the manner claimed, for the reason that the roving, as it came from the machine, had insufficient tensile strength to have drawn the plaintiff's finger upon the shaft and to have produced the injury. This contention presents the question whether there was evidence to support the plaintiff's theory of the accident in so far as such theory is essential to recovery. It is conceded by the plaintiff that the roving, when deposited in the can, is a straight, untwisted rope of cotton which is easily broken. It appeared in evidence that, when passing through the machine, the cotton sometimes adheres to the smooth steel rolls, in which event the rolls have to be stopped while the cotton is picked off; that if the cotton roving gets twisted it becomes harder. It is a matter of common knowledge that fibrous material like cotton when twisted, as in spinning, becomes harder and stronger. The evidence is silent as to the quantity of cotton the roving contained for a given length, and as to the amount of twisting required to give it sufficient strength to have drawn the plaintiff's hand into the machinery. How far the roving may have been snarled or twisted by its fall from the can, by its contact with the revolving pulley, or by the act of gathering it up, is not disclosed. The verdict, however, is not necessarily predicated upon

the sufficiency of the strength of the roving to have itself cut and torn the flesh from the finger. It seems to be conceded that the injury was produced in some manner by contact either directly or indirectly with the moving machinery, but it does not certainly appear whether such contact was with the shaft or the pulley. The only evidence of the accident comes from the plaintiff. She testifies that she did not put her hand on the shafting; that as she bent over to put the cotton into the can her hand was pulled "right into the lower part," "into the frame," "into the pulley"; that when she pulled her hand out all of the flesh was torn off the little finger; that she did not know what pulled her hand into the machinery, nor how it was done, it was done so quickly. The jury had a view of the premises. It is assumed that the jurors saw the machine in operation, and that there were pointed out to them the position where it was claimed the plaintiff stood, and the place where the can and cotton lay with reference to the shaft and pulley. The roving-can and samples of the roving were produced at the trial. Under both direct and cross examination the plaintiff was required to leave the witness stand and to indicate to the jury the position of the can and of the fallen cotton with reference to the machine, and the manner in which she held the can and attempted to gather up the cotton. The cotton lay upon the floor. The part of the machinery which was nearest the floor was the lower portion of the pulley about which passed the belt which propelled the rolls above. The portion of the pulley nearest the plaintiff was revolving downward and away from the plaintiff as she reached down for the cotton. It cannot be said as a matter of law that the position of the cotton with reference to the pulley and the strength of the roving were not such that the plaintiff's little finger might have been drawn by the cotton into the nip of the belt and pulley. Manifestly it could be found that these were capable of producing the injury complained of.

Furthermore, the defendant makes the somewhat inconsistent claim that, if the accident happened in the manner claimed, the danger was an obvious one and that, therefore, the accident was due to an assumed risk of the plaintiff's employment. The plaintiff had the burden of proof that her injury was due to a risk she did not assume. *Bjork* v. *Company*, 79 N. H. 402, 404. But she assumed only such risks of her employment as she knew of and appreciated, or which would have been disclosed to her by the exercise of due care. *Cassidy* v. *Company*, 79 N. H. 427, 429; *Olgiati* v. *Company*, 80 N. H. 399, 402. The question, therefore, arises whether there

was evidence from which the jury could find that she did not know and appreciate the risk of having her hand drawn upon the moving shaft and pulley by the roving, and was not at fault for the lack of such knowledge and appreciation.

The plaintiff had been instructed in the operation of the drawing frames and for nine weeks had filled the position of a spare hand on these machines and on railway head machines. She knew the shafting and pulleys were in motion and unguarded, and that if she got her hands in the pulley or on the shafting when moving she might get hurt. She knew that if the cotton got around the shafting it might wind and in that case that it would be dangerous. On the other hand she had no duties to perform with reference to the shafting and pulleys and no control over them; she had never seen any cotton wound on the shafting and her attention had not been called to the danger of roving becoming caught on this portion of the moving machinery. In substance the plaintiff testified that she did not touch the shaft; that when she bent down to pick up the can she did not see any cotton on the shaft, or observe the proximity of the roving to the shaft and pulley, because the place was so cluttered up with cans it was impossible for anyone to pass through; that her thoughts were on picking up the roving and putting it in the can so she could attend to her other work; that it all happened very quickly; that as she went to pick up the cotton the first thing she knew her hand was drawn into the shaft or pulley. Her testimony tends to prove that the only danger from the pulley and shafting of which she knew or which she appreciated was the danger of getting her hands in contact with them, and that it had never occurred to her that her hand might be drawn against them by the roving. Nothing had taken place in her experience to suggest this possibility. It is manifest that dangers which would be apparent to one familiar with the mechanical principles which govern the process of carding and spinning cotton fibre are not necessarily patent to one of the plaintiff's limited knowledge and experience. In view of such limited knowledge and experience and of her lack of opportunity for observation, it could be found that she did not appreciate the danger of having her hand drawn into the machinery by cotton roving overturned in proximity to moving shaftings and pulleys, and was not at fault for her want of such appreciation.

When asked if she was careful when she picked up the cotton roving she replied that she "didn't think anything about it" — that she picked it up as she had before "not thinking of any danger" — that

she "didn't think anything about" getting her hands on the shaft or pulley or that the cotton would wind on the shaft. The defendant contends that this testimony conclusively establishes the plaintiff's contributory negligence. It is to be borne in mind that the plaintiff testified positively that she did not put her hand upon the shaft. It could be found that the admissions relied upon, therefore, amounted to no more than a statement that the possibility of the roving drawing her hand upon the shaft or pulley had never occurred to her, which, as we have seen, was explained by her limited knowledge and experience. This is, therefore, not a case of unexplained absence of thought in a situation of known danger, as was the case in *O'Hare* v. *Company*, 71 N. H. 104, 107, upon which the defendant relies. The fact that a contrary inference might be drawn from the plaintiff's admissions does not avail the defendant.

*Exceptions overruled.*

All concurred.