JAMES H. BRIDGES

*v.*

GREAT FALLS MANUFACTURING COMPANY.

222

*Mathews & Varney* (*Mr. Varney* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

SNOW, J. I. The plaintiff claims that his injuries were caused by the defendant's negligent failure to provide a proper cable and to maintain a suitable safety device. The defendant contends that there was no evidence on which a jury could find that such injuries were due to its negligence in either respect; that, on the other hand, both the breaking of the cable and the failure of the safety device to function were conclusively shown to have resulted from the plaintiff's own negligent conduct. The denials of defendant's motions for the withdrawal of issues, for a nonsuit and for a directed verdict

present the usual questions relating to the negligence of the defendant and the care of the plaintiff.

1. The cable was five-eighths of an inch in diameter, made up of six strands of steel wire twisted around a hemp cord. Each strand was composed of nineteen steel wires also twisted together. The purpose of the hemp core was to increase the flexibility of the cable, and at the same time to keep the strands apart, and thus to prevent the wires, of which it was composed, from chafing too much against each other. The plaintiff's evidence tended to show that continual use of such a cable, by reason of its constant flexing over the sheaves, has a tendency to break up the fibers of the hemp cord and to reduce it to "a condition of a number of short fibers, almost dust;" that this condition in turn increases the rapidity of the wear on the cable by the contact of the wires with each other, and also sets up "a condition of fatigue in the metal, that is, sort of a deterioration, loss of strength" that, upon inspection, such condition would be disclosed to the naked eye by a slight decrease in the apparent size of the cable, and by broken wires if any on the outside of the cable; but that broken wires within the strands would not be thus observable. It was conceded by the defendant's experts that the wires that make up the strands, "due to wear in any one place will get worn down to a point of where they will crack and break as they pass over, or bent, over a sheave," and that the weakest points in a cable are usually found in the portions where it flexes over the sheaves or over the drum.

One King, a machinist, employed by the defendant to repair the elevator the morning after the accident, was called by the plaintiff and testified that the point of break in the cable was between "four or five feet above the elevator" car, "above . . . where it fastens into the elevator . . . four or five or six feet possibly." The cable at this point flexed over the nearest sheaf every time the car ascended to, or descended from, the second floor. He also testified that the cable "looked as though it might be a little smaller" than five-eighths of an inch in diameter, which appearance he attributed to the fact of its being "so long in service it might have stretched a little." The defendant's "mechanical expert" testified that "the break was approximately eight inches long" and that "the strands were broken in various places along" that distance. The defendant's "consulting engineer" testified that, on his examination September 21 prior to the accident, he found the cable "worn in what we would call ten per cent of wear on the wires outside of the cable, and there were a few, but so few that I didn't record them in my report, wires broken in the cable itself;"

that "If there are five or six of those broken in any one strand we . . . invariably ask to have the cable renewed, because it has reached a point where . . . that is theoretical, twenty-five per cent of its strength is gone." There was evidence that the cable had been in use for a period of over five years, and the defendant submitted no evidence as to how much longer it had been in service. The defendant's "safety" inspector testified that nobody knows "how much it takes to break them [cables] after they run several years." As will be seen later, there was evidence from which the jury might find that the inspections by the defendant's experts were superficial.

On this evidence the jury could find that the break in the cable was due to weakness induced by wear and deterioration, and that the defendant was in fault for failure to discover such defect and to maintain a suitable cable for the required work. The defendant's contention that the plaintiff failed in proof of its fault for the want of direct evidence of a specific defect in the cable is without merit. The situation here presents no exception to the rule that facts may be proven by circumstantial evidence. *Gahagan* v. *Railroad*, 70 N. H. 441, 444; *Stevens* v. *Company*, 73 N. H. 159, 173; *Wright* v. *Railroad*, 74 N. H. 128, 132; *Boucher* v. *Railroad*, 76 N. H. 91, 93, 95; *Summerfield* v. *Wetherell*, 82 N. H. 513, 516; *Kruger* v. *Company*, 84 N. H. 290, 293, 294.

2. There is no merit in the defendant's position in argument that it was under no duty to maintain a safety device to arrest the fall of the elevator because no statute required it. Nor is it necessary to consider whether the jury could find, from their common knowledge, that reasonable care requires an employer in all cases to maintain safety devices upon his elevators furnished as a work-place. There was expert evidence that safety devices were customary, and "supposed to be on every elevator." The fact that the defendant had installed such devices upon several elevators of like construction in its factory tended to show knowledge of the need of such protection in similar situations. *Warburton* v. *Company*, 75 N. H. 592; *Rockwell* v. *Hustis*, 79 N. H. 57, 59; *Speares Sons Co.* v. *Railroad*, 80 N. H. 243, 244; *West* v. *Railroad*, 81 N. H. 522, 523; *Stocker* v. *Railroad*, 83 N. H. 401, 405; *Duteny* v. *Company*, 84 N. H. 65, 68. The defendant was bound to do what a man of ordinary prudence would have done under the circumstances to guard the plaintiff from any danger which it should have apprehended. *Warren* v. *Railway*, 70 N. H. 352, 363; *Bouthet* v. *Company*, 75 N. H. 581, 583; *Kambour* v. *Railroad*, 77 N. H. 33, 43, 45; *Collins* v. *Hustis*, 79 N. H. 446, 449; *Zajac* v. *Company*, 81

N. H. 257, 260. If the jury found that the cable was in a worn and deteriorated condition, they might well have found that the ordinary man in the defendant's situation would have anticipated the possibility that it might break and would have provided the necessary protection. *Huntress* v. *Railroad*, 66 N. H. 185, 191; *Derosier* v. *Company*, 81 N. H. 451, 466; *Dervin* v. *Company*, 81 N. H. 108, 111; *Watkins* v. *Railroad*, 83 N. H. 10, 13.

King testified that he found the dogs on the safety device "in rusted shape and corrosive;" that he took the shoes to the machine shop; that, unable to loosen the dogs by hand, he saturated them over night in "what they call 'Loosen-up'," but that this did not loosen the rust; that he then applied heat with a blow torch to no avail; that, failing to remove the dogs from the studs by these means, he "rapped on them a little bit" when one broke and that he finally split the dogs from the studs with a cold chisel; that he found that the dogs which were supposed to rotate freely on the studs were corroded in one position. There was evidence that there was between two and four inches of water in the elevator well. It seems unnecessary to say that the jury could have found on this evidence that the failure of the safety device to function was due to the defendant's fault in failing to maintain the protective device in suitable condition.

The defendant relies upon evidence of frequent inspections, both of the cable and of the safety device, to exonerate it from legal fault. It showed that the elevator, including these parts, were examined by its "mechanical superintendent" once in two months, his last inspection (as we have seen) being on September 1st preceding the accident on October 28th; that it was likewise inspected by its "safety" inspector once each month, his last inspection being on October 19th; that it was inspected by its "consulting engineer" on September 21st. These witnesses testified that, allowing the usual factor of safety of eight to one, they found the cable and safety device each in good or suitable condition for the required service. If the jury believed the testimony of King as to the condition of the corroded dogs they may well have found that all these inspections, as respects the cable as well as the dogs, were superficial and ineffective to discover their true conditions. It is sufficient to say that the evidence of the inspections did not conclusively establish, either that the cable and the safety device were free from defects, or that the defendant was free from fault in failing to discover such defects and to take the necessary measures to remedy them. *Chesbrough* v. *Company*, 77 N. H. 387.

3. The defence primarily relied upon, however, was that the plain-

tiff's negligent operation of the elevator caused the cable to break and at the same time prevented the safety device from operating. It was the defendant's position that the breaking of the cable was due to an excessive strain thereon caused by the plaintiff's negligence in so placing the westerly truck that the handle thereof projected southerly beyond the elevator platform where it came in contact, first with the gate, and then with the header of the basement door; that such contact tipped the truck forward so as to bring the projecting spindle of the core thereon in contact with the shear board above the header where it finally struck an iron spike therein; that the added strain produced by such contacts snapped the cable; that the force, being applied at a point west of the center of the car, so wrenched the car as to prevent the safety device from functioning. In support of its theory of the accident the defendant relied upon the character of the break in the cable, the fact that the handle of the truck was broken, and upon evidence of the positions, following the accident, of the handle, truck and roll; upon proof of marks, in a vertical line with the position of the truck and corresponding in form to the end of the handle, made on the gate and the header, together with marks upon the shear board directly above, which might have been produced by the projecting spindle of the core, and other marks thereon which might have been made by the slats of the elevator gate; also upon evidence that the floor boards of the platform under the front wheel of said westerly truck were broken, that the lower portion of the westerly guide was splintered and the car so distorted that the westerly side thereof was between five and six inches lower than the easterly side. There was also testimony by another employee, who was in an adjoining room, of a scratching noise preceding a "bang" made by the falling car.

The evidence, however, was conflicting as to the position of the broken handle, and of the roll upon the westerly truck. There was evidence that there were other, and unexplained marks, upon the gate and shear board; that a stringer under the center of the car platform, and a floor board under the easterly truck, were also broken; that small pieces of wood were floating on the water in the bottom of the well which might have caused, or contributed to produce, the wrenching of the car. The noise of the fall of the elevator car was described as a "crash" by all the witnesses who testified to hearing its fall save the one above mentioned. The jury were shown photographs of the alleged marks which were also described by witnesses. The truck roll and handles together with a model of the elevator were exhibits in the case.

In direct conflict with the defendant's theory of the accident, the plaintiff testified that he backed the loaded trucks upon the elevator platform until they hit the back wall of the car; that he was careful in placing the trucks; that he turned the handles so that they would neither "stick out" nor "be pointed out"; that, by the swinging of the handle, the small front wheel which turned with it trigged the truck; that he then pulled the shifting rope and started the car which seemed to move easily and smoothly; that he turned around and, facing the nearest roll, put his hand on it and was watching the rolls; that they did not move; that, when he had reached a point where he could look into the upper room, and when his waist line was opposite the floor of the second story, something gave way and he "went down quick to the bottom."

The defendant's position comes to this, that the circumstantial evidence conclusively establishes both the conduct of the plaintiff and its negligent character, notwithstanding his explicit testimony denying both. After a careful examination of the record we are unable to say that all fair-minded men must agree, either that the accident was produced by the contact of the handle and spindle with gate, header and shear board, as the defendant claims, or that, if it were so found, that such contact was due to the negligence of the plaintiff, as distinguished from a mistake in judgment on his part in the placement of the truck. *Huntress* v. *Railroad*, 66 N. H. 185, 191; *Folsom* v. *Railroad*, 68 N. H. 454, 460; *Genest* v. *Company*, 75 N. H. 365, 367; *Hurlich* v. *Railroad*, 81 N. H. 286, 287. The defendant correctly states that the mere fact that the cable broke does not conclusively establish the fault of the defendant. No more would the mere fact, if it were found, that the cause of the cable's breaking was the projecting handle of the truck conclusively establish the fault of the plaintiff. *Paine* v. *Railroad*, 58 N. H. 611, 613; *Foss* v. *Baker*, 62 N. H. 247, 249; *Bell* v. *Company*, 84 N. H. 273, 274. The presence or absence of fault in either case was to be gathered from the circumstances, and each issue presented a question of fact for the jury if there was evidence upon which reasonable men might disagree.

We are not unmindful that it conclusively appeared that the gate at the elevator entrance was tied up to a nail, and that the defendant claims that, had it been dropped, it would have either prevented the handle from projecting beyond the platform, or, by rising with the projecting handle, would have warned the plaintiff of danger in season to enable him to avoid it. If, however, it were conceded that such were the functions of the gate, that the handle projected and caused

the cable to break, the evidence as respects the gate presented, at most, a disputed question of fact; for the plaintiff testified that the gate was tied up when he went on the job, and that, during his four months' service in the use of the elevator he had never seen the gate down, had never touched it and had received no instructions to lower it. It is conceded that his overseer made frequent use of the elevator. It cannot be said, as a matter of law, that the plaintiff was chargeable with notice that it was dangerous to operate the elevator with the gate fastened up in the manner in which he found it, and in which it had remained during the entire period of his service; and no defence either of the assumption of risk or of contributory negligence was thereby demonstrated.

In short, it is our conclusion that the evidence warrants findings that the defendant was negligent both in failing to provide a suitable cable, and in failing to maintain the safety device in working condition, the finding of one or both of which established the defendant's fault; that the defective cable and safety device, one or both, caused the plaintiff's injury; and that the evidence does not conclusively establish the plaintiff's fault. The case in its main features is identical with *Chesbrough* v. *Company*, 77 N. H. 387. The defendant's motions for a nonsuit and a directed verdict, as well as its motions to withdraw issues as to the defendant's negligence, were properly denied.

II. 1. A witness, called by the defendant, qualified as a mechanical expert. Asked at what point excessive force was or could have been applied to break the cable, he undertook to enumerate a series of events which in his opinion happened to produce the accident. The defendant excepted to the exclusion of the answer as irresponsive. The enumerated events were inferences drawn by the witness from the marks shown the jury. No mechanical principles, unfamiliar to the jury, were involved in their deduction. The witness was subsequently allowed to indicate points on the car and the header where, in his opinion, the force which broke the cable was applied. There was no error in the exclusion, either as irresponsive or as being valueless to aid the jury, of such parts of the answer as were not covered by the later inquiry.

2. The same witness was later asked the question: "Assume . . . that at the time the elevator was raised . . . out of the . . . pit, it was found that the dogs . . . which was supposed to be on the westerly track were free from the track . . . that the track itself in the lower portion was broken or splintered so that it was free from the stud

[track] to which it was ordinarily attached; what in your opinion as an expert would that indicate to you?" The question was excluded after conference in chambers, subject to the defendant's exception. No indication is contained in the record of the expected answer. The question might have been excluded because it was too general to entitle the defendant to put it without limitation. It does not appear in evidence that the witness had had any experience in falling elevators under similar circumstances which would make his knowledge superior to that of the jury in diagnosing the cause of the accident. In the absence of any reported findings, it must be assumed that the court found that what the assumed facts indicated to the witness would not aid the jury.

3. The attention of a lay witness, being called to the broken handle, he was asked the question "whether or not in your opinion the mark which you saw on the gate could have been caused by that handle?" The jury had seen the mark and handle, and both had been described in evidence. The witness was allowed to state that the mark on the gate was about the size and shape of the handle. Exception taken to the exclusion of the question was without merit.

4. The defendant's "safety" inspector had testified that, in the condition in which he found the safety device upon his inspection October 19, prior to the accident, he would have expected it to function under normal conditions. He then gave a detailed account of his investigation following the accident, in which he described the wrecked elevator and the indicia on which the defendant relied to show that the cause of the accident was the projecting handle of the truck. He was then asked, "from your examination there whether or not in your opinion that elevator dropped under normal conditions?" The question was properly excluded. If the inquiry had any clear meaning, it called for the witness' opinion upon one of the main issues before the jury, namely, whether the accident was caused, as the plaintiff claimed, by a defect in the cable, or as the defendant claimed, by an excessive strain due to some force applied on one side of the car, like the projecting handle. All the facts upon which the witness was asked to form his opinion were before the jury. The condition in which the car and all the appliances were found following the accident had been fully described. The plaintiff was entitled to have the issue determined by the jury on the evidence, unaffected by the opinion of an expert.

III. 1. No question of law is presented by the defendant's exceptions to the latitude permitted in the cross-examination of its "safety"

inspector, comparing his methods of inspection with those adopted and followed by its "mechanical superintendent," for the purpose of disparaging the testimony of the former.

2. The defendant's "consulting engineer" had been allowed to testify on direct examination that a wedge applied between the platform of the car and header to one side of the center would have the effect to "wrack" the car and if "wracked enough" would put the safety device out of commission. Upon cross-examination he was allowed, subject to the defendant's exception, to answer the question "if in the fall of that elevator . . . any part of the bottom of the car had struck on a piece of wood or block that would have held it up from the bottom of the well, would you have expected the elevator car to have been in a twisted condition?" There was evidence from which it could be found that small pieces of wood were found floating on the water in the elevator well following the accident. The inquiry was well within the latitude of cross-examination.

3. This witness had testified that, from his examination of the safety devices before the accident, he would have expected it to function under normal conditions. On cross-examination he was asked whether he would expect it to operate if the dog on the shoe was so rusted it could not be turned on the stud by hand. The defendant's exception to the question on the ground that it did not include a recital of all the surrounding circumstances in evidence is not well taken.

4. The defendant excepted to the admission, as an exhibit, of an iron shoe similar in principle to the one used on the elevator in question, but differing in that it was designed to slide on a "T" shaped steel track instead of on a wooden guide. The admission of the exhibit carries an implied finding that it would aid the jury in understanding the principle upon which the device in issue operates. No error appears in its admission. *Ordway* v. *Haynes*, 50 N. H. 159, 165.

5. The plaintiff inquired of his witness, "Can you tell the jury anything about the properties of an iron of that quality [truck handle] with reference to how it will break or how it will bend? . . . whether it bends before it breaks, or snaps off short?" The witness had qualified as a structural engineer with five years' experience in the shop designing steel, iron and concrete construction, and six years as professor in the department of architecture at our state university. There was no error in the implied finding of the trial justice that the witness possessed knowledge of the bending and breaking qualities of the material in the handle so far superior to that possessed by the jurors as to be of probable aid to them. The question was properly

admitted. *State* v. *Killeen*, 79 N. H. 201, 202; *Olgiati* v. *Company*, 80 N. H. 399, 403; *State* v. *Mannion*, 82 N. H. 518, 523.

IV. The defendant excepted to the denial of its motion to submit special issues to the jury, to wit, "Did the plaintiff in locating the truck and roll on the elevator platform, so place same that the truck handle, or any portion of the truck and/or the roll projected out over the edge of the elevator platform, which caused or contributed to the cause of the cable breaking. . . . [or] which caused or contributed to the cause of the accident." Whether justice or convenience required the submission of such special issue was a question for the trial justice. It does not appear that there was any abuse of discretion. *Elwell* v. *Roper*, 72 N. H. 585, 586; *Beckley* v. *Alexander*, 77 N. H. 255, 258.

V. 1. The defendant excepted to the refusal of the court to instruct the jury as follows: (1) "If you find as a fact that the plaintiff permitted the handle of the truck, or any portion of the truck or roll to project or extend over the edge of the elevator platform, which in any way caused, or contributed to the cause of the accident, he is guilty of contributory negligence as a matter of law, and your verdict must be for the defendant." (2) "If you find that the plaintiff permitted the handle of the truck, any portion of the roll, or any of its appurtenances to extend over the edge of the elevator platform, which resulted in breaking the elevator cable, the plaintiff is guilty of contributory negligence as a matter of law, and your verdict must be for the defendant."

The misplacement of the truck in loading so that the handle projected, if found, would not be conclusive proof of legal fault in the plaintiff. This subject has already been considered. The defendant relies upon *Cronin* v. *Company*, 75 N. H. 319. The evidence here differs materially from the evidence in that case, in that the plaintiff here not only, in effect, denied that any part of the truck or load projected, but testified to his exceeding care in its placement on the elevator platform. Under the law existing at the time of the trial of the earlier case, on the issue of the plaintiff's care the plaintiff had the burden while here, either the absence of evidence, or the want of a preponderance thereof in favor of the defendant, required a finding for the plaintiff.

The instruction given by the court was as follows: "The specific claim of the defendant as to the plaintiff's negligence is that he loaded the trucks containing the rolls of cloth onto the elevator in such a way that the handle of the truck and the end of one of the cores upon which

the cloth was wound came in contact with the side of the elevator well and caused the accident. Also, that he should have kept the gate closed down so that projections on trucks and the rolls would not have extended out into the door of the elevator well. You will first determine whether either or both of these conditions existed. And, as I have said, the burden of establishing that fact by a preponderance of the evidence is upon the defendant. If you find that these conditions, either or both, did exist, then was the plaintiff negligent in permitting them to exist? That is, would a reasonable person have taken care that they did not? If you find that they did exist and that a reasonable man would have taken no greater precautions than the plaintiff did, and would have loaded the truck and left the gate the same as he did, he was not negligent. If you find that a reasonable person would have done differently, he was negligent. If you find that he was negligent and that such negligence contributed in any degree to the cause of the accident, he was at fault and cannot recover."

On the evidence in the instant case, under the present statutory rule as to the burden of proof of contributory negligence, the instructions as given were correct and sufficiently favorable to the defendant.

2. The defendant's remaining requests for instructions were in substance covered by the charge.

VI. The defendant's exceptions to the denial of its motions to set aside the verdict and for judgment *non obstante veredicto* are without merit. *Bennett* v. *Larose*, 82 N. H. 443.

*Judgment on the verdict.*

All concurred.