Merrimack, }
May 4, 1926. }

GEORGE A. JENNINGS *v.* BOSTON & MAINE RAILROAD AND NEW ENGLAND BOX COMPANY.

An employer is not required to give warning of a danger to an employee who is already in possession of all the facts necessary to enable him to protect himself.

CASE, for negligence. Trial by jury. Verdict for the defendant railroad. Nonsuit as to the defendant box company.

The plaintiff was injured while in the employ of the defendant box company, hereafter referred to as the defendant, upon April

20, 1922, as he was on his way home to dinner at noon. In leaving the defendant's factory, he made use of a large doorway in the shipping room which opened onto a sidetrack running along the west side of the building. This doorway, which was designed primarily as a freight entrance, was about twelve feet from the northwest corner of the building, and the bottom of it was three or four feet above the rails of the sidetrack. When cars were set upon this track, they came within ten or twelve inches of the west wall of the factory. As the plaintiff was stooping in the doorway and about to let himself down onto the track, he was struck by a freight car which was being backed onto the siding by the defendant railroad, knocked to the ground between the car and the building, and injured.

There was a door marked "Entrance" at the north end of the factory which most of the employees of the defendant used as an entrance and exit, but there was evidence that many of them used the freight entrance in question when leaving the plant. West of the sidetrack was the main line of the railroad, and at a point opposite the doorway in question there was a well-defined path leading from the railroad property to a highway.

The railroad took away loaded cars from this sidetrack and replaced them with empties every day. The plaintiff, who had worked for the defendant in all about five months before the accident, described the customary method of doing the work as follows: The shifter usually got in onto this sidetrack at half past ten or eleven o'clock and would be gone before noon. When the train was backed in, there was always a man walking fifteen or twenty feet ahead of the cars. They usually shifted in one or two cars at a time. They always rang the bell on the locomotive when they backed in. They usually came in at a speed of three or four miles an hour. Generally a man rode on the head end of the first car.

At the time of the accident the plaintiff testified that the train came in at a speed of ten or twelve miles per hour; that the bell was not sounded; that no man preceded the cars as they came in; and that there was no one riding on the first car. Other facts appear in the opinion.

Transferred by *Sawyer*, J., upon the plaintiff's exception to the granting of the defendant's motion for a nonsuit.

*Joseph C. Donovan* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Lucier & Lucier* (*Mr. A. A. Lucier* orally), for the defendant.

BRANCH, J.   Although both the railroad and the box company were named as defendants, the record plainly indicates that the case was tried by the plaintiff primarily as an action against the railroad, and in an effort to fasten liability upon that defendant by showing an unusual operation of the train, the plaintiff described in detail the usual method of shifting cars. He thus asserted a very considerable familiarity with that subject. The verdict against him was fully justified by the evidence of his own lack of due care.

Having failed to charge the railroad upon the strength of the knowledge which he claimed to have, he now seeks another opportunity to pursue the box company upon the ground of ignorance. The argument is that the defendant knew or ought to have known more about the danger of using the freight entrance as an exit than the plaintiff did and that "upon the facts disclosed some warning to the plaintiff of the danger" was necessary.

The specific point upon which it is argued that the defendant was better informed than the plaintiff, is the time at which shifting was likely to be done. A railroad trainman called as a witness by the plaintiff testified that they did their shifting "any old time"; that sometimes they were gone before noon and sometimes they were not; that he had been in there before at noon when men were coming out of the shop. From this testimony it is argued that the defendant knew that its employees might encounter a train working on the sidetrack when they left the factory at noon. It is claimed that the plaintiff was ignorant of that danger, and that the defendant should therefore have warned him about it. But the duty to warn extends only to dangers of which the servant is ignorant (*Fontaine* v. *Company*, 76 N. H. 163; *O'Hare* v. *Company*, 71 N. H. 104; *Collins* v. *Company*, 68 N. H. 196; 3 Labatt M. & S. (2d ed.), *s.* 1143), and the complete answer to this argument is found in the plaintiff's own testimony.

It is clear from his testimony that he knew that the shifting crew had no regular schedule and that the time when they did their work at the defendant's plant was irregular and uncertain. His indefinite statement that the shifter usually got in onto this sidetrack "about half past ten or eleven" was an indication of this fact, and in spite of his repeated assertions that he did not expect a train to be there at noon, he testified, upon direct examination, that upon a previous occasion he had seen a train on the sidetrack at noon, and he described fully what was said and done at that time.

Upon cross-examination, he testified to his knowledge that the

sidetrack might be used at any time as follows: "Q. When you see a sidetrack or railroad track or main track or any other track where trains run or cars are placed, you know that that track is apt to be used to run cars back and forth on, don't you? A. I do, sir. Q. And you don't know but what it may be occupied at any time by a train or an engine, do you? A. No, sir. Q. And you knew that on the day when you were injured, did n't you? A. Yes, but I expected to see a man on ahead of it. Q. You were looking for a man on ahead of it? A. Yes, sir, certainly."

Finally, in attempting to justify his conduct at the time of the accident, he indicated his appreciation of the danger by the following testimony: "Q. You say you did look? A. Yes. Q. You looked to see if there was a train coming? A. Yes, I always looked before I go onto a track, both ways. Q. You knew the careful thing to do was to look to see if a train was coming? A. I always looked. Q. You knew that was a careful thing to do? A. I always did it. Q. You knew that day when you came out there that if you saw fit to use that four foot drop down to the track instead of using the main entrance, the thing for you to do was to look before you crossed that track to see if a train was coming, did n't you? A. I did look, but when I looked out that way, the car was on me. It was right onto me then. . . . Q. You intended to look when you came out there, did n't you? A. I certainly did. Q. And the reason for that was because you thought a train might be coming, or a car? A. I always looked, just a habit I had; I always looked. Q. You were going to look to see if any car was coming along? A. Yes."

From this testimony it is plain that the plaintiff fully realized the possibility that a train might be on the sidetrack at that time and appreciated the necessity of looking to ascertain what the fact was. Knowledge of the "general possibility of danger" from this source was sufficient to charge him with the duty to anticipate and meet it by "protective action." *Kenney* v. *Len*, 81 N. H. 428; *Tullgren* v. *Company, ante*, 268. Since he was already in possession of all the facts necessary to enable him to protect himself, the defendant was not required to give him further warning. *Collins* v. *Car Company, supra; O'Hare* v. *Company, supra.*

The claim of the plaintiff that he relied upon the custom of the shifting crew to get away from defendant's plant by noon, and that he did not expect a train to be there at the time of the accident, was not without significance as tending to explain his conduct

upon that occasion, but it cannot destroy the effect of his admissions, set forth above, from which it is clear that his knowledge of the situation and its dangers was in all substantial particulars complete.

*Exception overruled.*

All concurred.