Hillsborough, } 
Oct. 6, 1936. }

DELBERT QUIMBY *v.* HARLAND R. SHATTUCK.

Transferred by *Burque, J.*

*Robert J. Doyle* (by brief), for the plaintiff.

*George I. Haselton* (by brief), for the defendant.

PAGE, J.   The plaintiff suffered the injuries for which he seeks to recover while working for the defendant upon the latter's farm.   One of his duties was to care for the defendant's cattle.   Among these was a bull which at the time he gored the plaintiff occupied a tie-up in the barn next to that of one of the cows.

The plaintiff had discovered that the cow had broken her stanchion and moved somewhat out of place.   Unable to get her into position otherwise, the plaintiff had stepped between her and the bull and slapped her in the face.   This having accomplished nothing, the plaintiff had lifted his foot to kick her in the nose, when the bull drew back his head and gored the plaintiff's leg.   At the moment, the plaintiff's back was against a post some six or eight inches from the nearest of the bull's stanchions.   He stood with his back towards the bull.

When the plaintiff entered the tie-up, the bull's head was between the stanchions and he seemed calm enough.   There was no evidence that either the plaintiff or the defendant had any knowledge that the bull was more vicious than the average of his kind.   It could be found that the method of tying the bull prescribed by the defendant was by chains so long as to permit the animal to back far enough to be able to withdraw his head from the stanchions.   The bull had never been dehorned, as both parties well knew.

The burden was upon the plaintiff to show that the risk to which he was exposed and which resulted in his injury was one which he did not appreciate and would not have appreciated if in the exercise of reasonable care.   *Bennett* v. *Company*, 74 N. H. 400.   The plaintiff's own testimony shows clearly that he in fact appreciated the risk. The plaintiff, a mature man, may be assumed to have possessed average intelligence.   He had been brought up on a farm; except for three years spent in factories and some time at school, he had always lived or worked on farms.   While he had had to do with a bull only for the six weeks he had worked for the defendant, he was fully aware of the general danger from the horns of all cattle and knew that bulls were more to be avoided than cows.

He knew, equally with the defendant, what was the method of

tying the bull and what was the attendant risk. He knew that the bull could withdraw his head from the stanchions, that "he could step way back with his feet clear across the trench behind him, and he stood back in the area a good many times; he could pull his head clear back from between the posts and swing his head around one side." The plaintiff further testified: "Naturally, I wouldn't go to the side of his head or anything like that; I knew better than that."

This testimony is clear and uncontradicted. There is no evidence that the defendant had such superior knowledge of the risk, either actual or constructive, as laid upon him a duty. *Merrill* v. *Company*, 79 N. H. 211; *Owen* v. *Elliot Hospital*, 82 N. H. 497, 498, and cases cited. The plaintiff's own knowledge was substantially complete. *Kruger* v. *Company*, 84 N. H. 290, 295; *Jennings* v. *Railroad*, 82 N. H. 323, 327; *Meersman* v. *Davison*, *ante*, 93.

*Judgment for the defendant.*

All concurred.